Thomas Vernon **DEBROOK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–86–386–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 21, 1988.

Joe K. Henley, Donna, Donald Killingsworth, Nicholas & Barrera, San Antonio, for appellant.

Ben Euresti, Dist. Atty., Brownsville, for appellee.

Before BENAVIDES, UTTER and KENNEDY, JJ.

## OPINION

BENAVIDES, Justice.

Appellant was found guilty of two counts of theft and was sentenced to serve eight years in the Texas Department of Corrections. The first count alleged the theft of 800 pounds of shrimp. The second count alleged theft of 1,800 pounds of shrimp.

In his first and second points of error, appellant challenges the sufficiency of the evidence to support the convictions of theft as alleged in the indictment. Because all 2,600 pounds of shrimp were transferred to appellant's shrimp processing company at the same time, we address the points together. On appeal, appellant contends the evidence is insufficient to show that he had the intent to deprive the owner of the property, and that the property was taken without the owner's effective consent. We agree with appellant and, therefore, reverse the judgment and order an acquittal.

The standard for review on appeal for the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984); *Henke v. State*, 730 S.W.2d 117 (Tex.App.—Corpus Christi 1987, pet. refused). The reviewing court must look at all the evidence in the light most favorable to the verdict or judg-

ment. *Henke v. State*, 730 S.W.2d at 117. If the evidence supports an inference other than a finding of the essential elements of the crime, then no trier of fact could rationally find the appellant guilty beyond a reasonable doubt. *Carlsen v. State*, 654 S.W. 2d 444, 449–50 (Tex.Crim.App.1983).

Appellant was the president of a shrimp processing corporation, Sea Ranch Packing, in Port Isabel, Texas. The State presented evidence to show that appellant operated his business either as a shrimp processor, whereby a buyer for the product was arranged before the shrimp was processed, or as an outright buyer, whereby appellant agreed to purchase all the shrimp brought in by various boats.

Ernest Gorena, the complainant, owned a shrimp trawler, the Virginia Lynn. Gorena and appellant had an agreement whereby Gorena would sell all his shrimp to Sea Ranch, and Sea Ranch would pay Gorena the high bid of the day. Sea Ranch would grade, package, freeze, and sell the shrimp to a buyer.

Janie Mota and Linda Swafford, bookkeepers at Sea Ranch, testified at trial that the company would not process shrimp until a buyer was located. According to Mota and Swafford, the buyers would not wire money to Sea Ranch until the day after processing, because the weight and grade of the shrimp had to be determined before the buyer knew how much to pay. Sea Ranch, therefore, had a policy not to pay the shrimpers until the day after processing.

On March 30, 1984, Gorena docked his shrimp trawler at Sea Ranch. Gorena testified that Sea Ranch would not process his shrimp because the appellant and William Walker, the Vice President of Sea Ranch, were out of town. Appellant and Walker were in Chicago meeting with one of their largest buyers, Ben Kozloff of Fresh Sea Taste Company. Walker testified that from talking to Kozloff's employees on April 3rd, he knew Kozloff was not going to buy any more shrimp from Sea Ranch; that he talked to appellant about this, and that appellant knew this up to the point when he (Walker) left Chicago. Walker,

however, left the meeting early, leaving appellant in Chicago with Kozloff. Later that day, appellant called his office from Chicago and ordered the processing of Gorena's shrimp. Swafford testified that appellant told her that Kozloff had agreed to buy the shrimp. The employees of Sea Ranch unloaded Gorena's boat, processed, and packaged the shrimp into Fresh Sea Taste cartons.

On April 3rd, Gorena was given two checks for his shrimp, one in the amount of $5,968.25 and the other for $10,169. Both checks were issued on the same day as processing and were typed by Mota and signed by Swafford. There was no evidence showing that on April 3rd, appellant knew Mota and Swafford had given Gorena the checks. Mota testified that she issued the checks to Gorena on the same day as processing because she "assumed" Kozloff would wire the money.

The record reveals that when appellant returned from Chicago on April 4th, Kozloff refused to buy the shrimp. Swafford testified that she and appellant attempted to collect money from Kozloff. When their collection attempts failed, Swafford told appellant that there were insufficient funds in the account to cover the checks issued to Gorena.[1] According to Swafford, appellant told her to "let them bounce." Later that day, appellant found another buyer, Farmers, who agreed to purchase the shrimp. Appellant told his employees to take the shrimp out of Fresh Sea Taste cartons and place them into Farmers' brand boxes. Farmers wired money to Sea Ranch on April 6th. Due to a mistake made on the $10,169 check, Mota and Swafford issued two new checks to Gorena totaling $10,169 on the fifth of April. Shortly thereafter, Sea Ranch filed bankruptcy.

At trial, Gorena testified that when the checks were returned for insufficient funds, appellant assured him that the money was in the account and urged him to resubmit the checks. When the checks

were again returned due to insufficient funds, Gorena went to appellant and demanded his shrimp. According to Gorena, appellant then told him Kozloff had taken the shrimp and had not yet paid for it. Gorena told the jury that he called Kozloff in Chicago and "learned differently." Gorena later became aware that Sea Ranch had filed bankruptcy.

William Walker testified it was his opinion that the company was not operated in good faith. According to Walker, appellant would sell "paper shrimp," shrimp that did not exist, to Kozloff. Walker and Swafford both testified that the Sea Ranch checking accounts had been overdrawn since its inception. According to these witnesses, appellant knew about the overdrafts yet still instructed the employees to write checks. Swafford testified that she did not know if there was a letter of credit or an agreement between the bank and appellant, but she testified the bank had paid all of the checks issued to the shrimpers before April 3rd.

We now must consider whether or not this evidence proves appellant committed theft.

In order to prove its allegations of theft, the State was required to prove that appellant, with the intent to deprive Ernest Gorena of his shrimp, obtained it without Gorena's effective consent. Tex. Penal Code Ann. § 31.03(a), (b)(1) (Vernon Supp. 1987). The State argues that the evidence was sufficient to prove both intent and lack of effective consent. It is the contention of the State that on April 3rd, appellant knew the account was overdrawn, knew he had no buyer, and yet ordered his employees to process Gorena's shrimp.

■ In the case before us, the record reflects that the shrimp was delivered to Sea Ranch pursuant to an agreement between Gorena and appellant. Gorena testified at trial that he had done business with appellant for approximately one year and had never before received a bad check from

---

1. The State argued that Swafford's collection efforts were unsuccessful because Kozloff had never bought the shrimp. No evidence, however, was introduced to show what Kozloff had

actually done, apart from appellant's statements showing Kozloff had purchased the shrimp on the third and had refused to buy it the next day.

him. Likewise, the record is devoid of any evidence that on April 3rd, when the shrimp was processed, appellant knew his employees had issued the checks, that he had ordered his employees to write the checks or that he knew the checks would not be honored. There was evidence tending to show that at the time the shrimp was appropriated, appellant knew the corporate account was overdrawn. The record reveals, however, that even though the account had been overdrawn since the corporation's inception, all checks issued prior to April 3rd were paid by the bank.

It would appear then, that on April 3, when the first checks were issued, the bank was still honoring checks being written on appellant's overdrawn account, and there is no indication that appellant knew the checks written would not be honored. More importantly, there is no evidence to show that appellant even knew the checks had been issued to Gorena on April 3.

When the checks were reissued to Gorena on April 5, Farmers had agreed to buy the shrimp. Thus, the evidence shows that on the dates when the checks were issued, appellant thought he had a buyer for his shrimp.

On April 4th, appellant told his employee to let the checks bounce. This statement, however, does not show that appellant had an intent to steal the shrimp, because later that day, appellant arranged another buyer for the shrimp and checks to Gorena were then reissued on April 5. Even if appellant's statement shows that he then knew the bank would bounce his checks drawn on insufficient funds, the evidence does not show that the bank would refuse to pay his checks after the expected transfer of funds from Farmers to appellant's account.

We cannot find that there is sufficient evidence that the appellant had the requisite intent of theft at the time of the appropriation of Gorena's shrimp.

■ In addition, the evidence fails to show that appellant acquired the shrimp without Gorena's effective consent. Consent is not effective if induced by deception or coercion. *Henke v. State*, 730 S.W.2d at 118; Tex. Penal Code Ann. § 31.01(4)(A) (Vernon 1974).

Since Gorena voluntarily sold his shrimp to Sea Ranch pursuant to an agreement, the State necessarily proceeded on the theory that the consent was ineffective due to deception. *See Wilson v. State*, 663 S.W.2d 834 at 836 (Tex.Crim.App.1984).

Deception is defined as:

"creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction; and that the actor does not believe to be true; or failing to correct a false impression of law or fact ...; or

*promising performance that is likely to effect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.* (Emphasis added)."

Tex. Penal Code Ann. § 31.01(2) (Vernon 1974).

On appeal, the State argues that this is not simply a "hot check case," but rather appellant was operating under the "guise of a business" when he took Gorena's shrimp knowing the corporation could not pay for it. The only testimony tending to support the State's theory that appellant had obtained the shrimp by deception, was the testimony of Walker that on April 3rd appellant knew Kozloff would not buy any more shrimp. Walker, however, left the meeting in Chicago early; therefore, there is no evidence in the record that when appellant ordered the processing of Gorena's shrimp, Kozloff had not agreed to buy the shrimp or had told appellant he would not purchase the shrimp.

Although Walker also told the jury that Sea Ranch was operated in bad faith and would sell "paper shrimp" to Kozloff, we find there is not sufficient evidence to show that appellant had deceived Gorena to obtain his shrimp. Although appellant appar-

ently incorrectly told Gorena that Kozloff had his shrimp, that statement, even in combination with the other circumstances previously discussed, does not show that, at the time he acquired the shrimp, appellant intended to maintain control of Gorena's property without compensation. We, therefore, find that no rational trier of fact could have found the appellant guilty beyond a reasonable doubt.

Finding that appellant's first and second points of error are dispositive, we need not consider appellant's additional points of error.

Accordingly, we reverse the judgment and remand the cause to the trial court for the entry of an acquittal.