Randy ROPER, Appellant,

v.

STATE of Texas, State.

No. 2–94–276–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 21, 1996.

David Wacker, Denton, for appellant.

Bruce Isaacks, District Attorney, Charles Breaux, Kathleen Walsh, Assistant District Attorneys, Denton, for state.

Before LIVINGSTON, BRIGHAM and HOLMAN, JJ.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

LIVINGSTON, Justice.

Pursuant to TEX.R.APP.P. 101, we have reconsidered our prior opinion upon the State's petition for discretionary review. Our December 7, 1995 opinion is hereby withdrawn and the following is substituted.

■ Appellant Randy Roper sold some bales of hay that were owned by his employer, Elton Terrell. Roper never gave the money to Terrell. Roper was indicted and a jury convicted him of the offense of theft of current money. TEX.PENAL CODE ANN. § 31.03 (Vernon 1994). The court assessed punishment of five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Roper brings four points of error challenging the conviction, including the legal sufficiency of the evidence. Because we find that there was insufficient evidence to prove that Roper took the money without Terrell's effective consent and intended to keep it from Terrell, we sustain Roper's sufficiency points and reverse the conviction.[1]

■ In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Emery v. State, 881 S.W.2d 702, 705 (Tex. Crim.App.1994), cert. denied, — U.S. —, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. See Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim.App.1991); Wicker v. State, 667 S.W.2d 137, 143 (Tex.Crim.App.), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. Matson, 819 S.W.2d at 846. In determining the sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." Id. (quoting Farris v. State, 819 S.W.2d 490, 495 (Tex. Crim.App.1990)). When determining sufficiency of the evidence, we are to consider all of the evidence admitted before the jury at the guilt/innocence phase of trial. Villalon v. State, 791 S.W.2d 130, 133 (Tex.Crim.App. 1990).

■ During the fall of 1991, Roper worked as a tractor driver on Terrell's Denton County farm to help support himself while he was getting his degree in horticulture. Roper was paid by the hour; but because Terrell lived near Abilene, Roper would keep track of his hours and Terrell would pay him weekly. Terrell's farm supervisor actually reported the hours to Terrell. Roper was a good worker.

In mid-December 1991, Roper contacted Terrell and asked him if he would be interested in selling any of the hay that he had at his Denton County farm. Roper had never sold anything for Terrell before. Terrell told Roper that he was planning on moving some of the hay to another farm in West Texas

---

1. Roper's second point of error challenges the sufficiency of the evidence to support the conviction. His first point of error challenges the trial court's denial of his motion for instructed verdict, which is also a challenge to the sufficiency of the evidence. Madden v. State, 799 S.W.2d 683, 686 (Tex.Crim.App.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991).

that he owned, but Roper could sell the rest. Terrell testified that he told Roper that he wanted to sell the hay for $16.00 a bale and that Roper could keep $1.00 a bale for a commission. Terrell further testified that he wanted the money up front and in cash before any hay was moved. Roper testified that Terrell told him he could sell the hay for cash money and keep some of the money for the wages that he owed to Roper.[2] Roper stated that no other conditions were put on the agreement. Regardless, Roper sold some of the hay to Richard Larson.[3] Because some bales were better quality than others, Larson paid $10.00 for some bales and $15.00 for others. Roper never said that he was selling the hay for someone else or that the hay was his—Larson assumed that the hay was Roper's. Larson gave Roper a check for $1,600, which was made out to Roper. Roper kept the check for "a day or two" and then deposited it at his bank. Soon after the sale in January 1992, Roper moved to Seminole, Texas because he got a new job selling equipment for a John Deere dealership.[4] Terrell testified that in March, after he found out about the sale, he called Roper at least two times at his sister's house in Frisco. According to Terrell, Roper told him that Larson had not paid for the hay yet but that Larson would mail him a check. Terrell found out that Larson had already paid for the hay when he spoke with Larson after he had called Roper. Roper testified that he never spoke to Terrell after he moved to Seminole and out of his sister's house in January. Terrell called him in 1994 after he moved to Dallas to manage a nursery,[5] but Roper testified that he did not know Terrell wanted the money until he was arrested.

Roper testified that he thought that he had permission to keep the money until Terrell asked for the extra money, if any, that was not part of the back wages that Terrell owed him. Terrell disputed that he owed Roper any money and stated that he only considered $100 of the money to be Roper's. At trial, Roper tendered $1,600 that he had borrowed from a friend into the court's registry; but, it was not accepted by the State.

■ To convict Roper of theft, the State had to prove that Roper, with the intent to deprive Terrell of the current money, obtained it without Terrell's effective consent. TEX.PENAL CODE ANN. § 31.03(a) (Vernon 1994). The State, at trial, tried to prove that Roper had the intent to deprive Terrell of his money by showing that Roper had the check made out in his name instead of Terrell's. This evidence is insufficient to show intent because Roper had no choice but to have the check made out in his name: Terrell would only take cash. Although Roper did not immediately turn over the money to Terrell, he believed he was entitled to the money for unpaid work he had performed. Further, the requisite intent must exist at the time of the taking. *Peterson v. State*, 645 S.W.2d 807, 811 (Tex.Crim.App.1983) (op. on reh'g); *Draper v. State*, 539 S.W.2d 61, 68 (Tex.Crim. App.1976); *see Nielsen v. State*, 836 S.W.2d 245, 248 (Tex.App.—Texarkana 1992, pet. ref'd). At the time Roper deposited the check, he had Terrell's consent to take the cash money in exchange for the hay. We cannot infer intent that might have existed at a later date to a previous action.

Thus, Terrell gave consent for Roper to take current money for the hay. However, consent is not effective if it was induced by deception or coercion. TEX.PENAL CODE ANN. § 31.01(3)(A) (Vernon 1994). Because Terrell voluntarily gave Roper consent to take the cash, the State necessarily proceeded on the theory that the consent was ineffective due to deception. *See Wilson v. State*, 663

---

2. Roper testified that he was owed approximately $1,400 for his commission for selling the hay and for 300 hours of work that he did after November 1991 and before late January 1992 when he moved to Seminole, Texas.

3. Larson testified that he bought more than 50, but less than 100, bales of hay. His usual practice was to buy 60 bales when he needed hay.

4. It was unclear at trial when Roper quit working for Terrell. Roper testified that he quit work-

ing for Terrell when he moved to Seminole. Terrell stated that Roper was no longer his employee when there was no more work to be done at the Denton County farm, which was in November 1991.

5. The record does not show what was discussed in this undisputed phone conversation between Roper and Terrell.

S.W.2d 834, 836 (Tex.Crim.App.1984). Failure to perform without other evidence of intent is not sufficient proof that the actor did not intend to perform. TEX.PENAL CODE ANN. § 31.01(1)(E) (Vernon 1994).

■ It is well settled that intent to commit theft can be inferred from the surrounding circumstances. *Coronado v. State*, 508 S.W.2d 373, 374 (Tex.Crim.App.1974); *Mattiza v. State*, 801 S.W.2d 195, 197 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). But, we cannot infer Roper's intent from the fact that he had the check made out in his name and cashed it. The terms of the agreement, according to both Roper and Terrell, required Terrell to be paid in "cash money."

■ This is a simple case of a civil contract dispute. The terms of the contract were unclear: When was Roper to turn over the money? How was he to take his share out of the payment? How much was Roper entitled to and was that share a commission or payment for previous unpaid work? Theft convictions resulting from otherwise civil contractual disputes may warrant reversal for insufficient evidence where there is no evidence supporting the requisite criminal intent. *See Peterson*, 645 S.W.2d at 811–12; *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Crim.App. [Panel Op.] 1982); *Debrook v. State*, 744 S.W.2d 357, 360 (Tex.App.—Corpus Christi 1988, pet. ref'd).

■ We pause here to note that the Court of Criminal Appeals has recently decided that we have the authority to review the factual as well as the legal sufficiency of the evidence to support a conviction. *Clewis v. State*, No. 450–94, slip op. at 1, —— S.W.2d ——, ——[, 1996 WL 37908] (Tex.Crim.App. Jan. 31, 1996).[6] This review is different from the legal sufficiency review standard discussed above in that, with a factual sufficiency review, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.' ... [and] set[s]

aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* slip op. at 2, —— S.W.2d at —— (citing *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet ref'd, untimely filed) (alterations in original)). To merit relief, we must determine that "the verdict is against the *great* weight of the evidence presented at trial so as to be *clearly wrong and unjust*...." *Id.* slip op. at 13, —— S.W.2d at ——. If a conviction is found to be factually insufficient under the *Clewis* standard, then we are to reverse and remand for a new trial. *Id.*

■ Once we have determined that the evidence is legally sufficient under *Jackson*, we may consider the factual sufficiency of the evidence "if it is properly raised." *Id.* slip op. at 10, —— S.W.2d at ——. Thus, the appealing party must make it clear that the party "wants a comparative weight of the evidence review." *Id.* slip op. at 2, —— S.W.2d at —— (Meyers, J., concurring). Merely asking for review under *Jackson* is not "an adequate substitute" for affirmatively asking for a factual sufficiency review. *Id.*

Roper, in his brief to this court, did not ask this court to do a "comparative weight of the evidence review." In fact, he explicitly states the facts in his brief as being "in the light most favorable to the verdict" and the tenor of his argument was that there was an absence of evidence of intent, not insufficient evidence. The State also did not refer to a factual sufficiency review either in their brief to this court or in their petition for discretionary review in the Court of Criminal Appeals, which was filed after *Clewis* was handed down. Further, because we have decided that the evidence was legally insufficient under *Jackson*, we do not need to do a factual sufficiency review.

Because the conviction must be reversed for insufficiency of the evidence to support the finding of guilty, this case is remanded to

---

**6.** We realize that an opinion that is not final is not a part of Texas's jurisprudence. *Komurke v. State*, 562 S.W.2d 230, 235 (Tex.Crim.App.1978), *overruled on other grounds by Cooper v. State*, 631 S.W.2d 508 (Tex.Crim.App.1982); *see also Yeager v. State*, 727 S.W.2d 280, 281 n. 1 (Tex.Crim.App. 1987). The *Clewis* opinion will not be final until

fifteen days after any motion for rehearing filed by the State is ruled upon. TEX.R.APP.P. 231. The State has been granted an extension to file its motion for rehearing until mid-April 1996. However, we felt reference to this important case was necessary.

the trial court with an order to enter a judgment of acquittal.[7] *See Burks v. United States,* 437 U.S. 1, 16–18, 98 S.Ct. 2141, 2149–51, 57 L.Ed.2d 1, 12–14 (1978); *Greene v. Massey,* 437 U.S. 19, 24–25, 98 S.Ct. 2151, 2154–55, 57 L.Ed.2d 15, 20–21 (1978). We further order the trial court to return the $1,600, which was tendered into the court's registry, to Roper.

---

7. Because of our ruling on Roper's insufficiency points, we do not need to address his remaining two points, which challenge the indictment and the admission of a prior offense at guilt/innocence.