Cecil v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-506-CR

LARRY D. CECIL, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM
 
OPINION
(footnote: 1)

------------

Appellant Larry D. Cecil appeals his conviction for theft.  In three points, appellant challenges the legal and factual sufficiency of the evidence and contends that his rights to due process of law and a jury trial were violated because the indictment did not allege, and the trial court’s instructions did not require the jury to find, all of the elements of theft.  We affirm.

In November 2002, Tina Harkins, the office manager at Frank Kent Cadillac (“FKC”), identified a series of unauthorized debits from an FKC account.  Ten transactions totaling $67,658
 appeared as credit reversals on FKC’s bank statements.  Harkins notified FKC’s general manager
, Dale Scruggs, and called FKC’s credit card processor, Nova Systems, Inc. (“Nova”), to report the problem
.  Nova determined that the perpetrator had debited FKC’s account by hand-keying personal account information into a credit card terminal containing FKC’s merchant information. 
 After learning that the FKC funds had been transferred to appellant’s account at Community Credit Union and that appellant was an employee of Beneficial Merchant Services (“BMS”), the Nova subsidiary that actually processed FKC’s credit card transactions, Harkins contacted the president of BMS
, Donnie Pounders, and asked him to investigate the matter. 

In the course of his investigation, Pounders obtained two written confessions from appellant.  
In the first confession, appellant admitted that he “stole $67,658 from Beneficial Merchant Services, Inc. from the beginning of November to the middle of December 2002.”  The next day, appellant faxed a second, more detailed confession to Pounders.

In the second confession, 
appellant admitted that he had purchased a Nurit 2085 credit card terminal, downloaded FKC’s merchant information to it, and credited his personal account with FKC funds multiple times throughout the month of November and the first part of December. 
 Appellant wrote that his initial intention was to “pay back creditors and revolving bills that I had . . . not to hurt anyone.” 
 He explained that he had thought that he could get away with it because his first transaction
(footnote: 2) “had gone through and there were no calls or anyone asking about it.” 
 Appellant stated that he spent the money on “paying bills, gambling, drinking, and buying a few gifts for family and friends.” 
Appellant also wrote that he had already returned some of the gifts, as well as a cashier’s check for $14,153 and $1,015 in cash, to Pounders because Pounders was going to repay the entire amount that appellant had stolen from FKC. 
 Pounders did, in fact, reimburse FKC in full for the stolen funds
. Appellant was charged with theft of 
property of the value of $20,000 or more but less that $100,000.  The indictment named Harkins as the owner of the property.  At trial, the State’s witnesses included Harkins, Scruggs, and Pounders, and the trial court admitted appellant’s written confessions and appellant’s and FKC’s bank statements into evidence.  The jury found appellant guilty of the offense as charged and assessed punishment at eighteen years’ confinement.  The trial court sentenced him accordingly.

In his first point, appellant contends that the evidence was legally and factually insufficient to support his conviction because the State did not prove 1) that Tina Harkins was the owner of the money taken from the FKC account, 2) that appellant intended to permanently deprive the owner of the money, or 3) that FKC was the victim of the theft. 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

In reviewing a point asserting that a finding is against the great weight and preponderance of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.  
Dow Chem. Co. v. Francis
, 46 S.W.3d 237, 241 (Tex. 2001); 
In re King’s Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex. 1951).  
We are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Zuniga v. State, 
144 S.W.3d 477, 481 (Tex. Crim. App. 2004); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s. 
 Zuniga, 
144 S.W.3d at 482.

After reviewing the evidence under the applicable standards of review, we find that the evidence is both legally and factually sufficient to support appellant’s conviction.  First, the record establishes that Harkins was the owner of the property.  The penal code defines "owner" as a person who: (A) has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor; or (B) is a holder in due course of a negotiable instrument. 
 Tex. Penal Code Ann
. § 1.07(a)(35) (Vernon Supp. 2004-05).  Harkins’s testimony that she was the FKC employee in charge of reconciling FKC’s financial statements demonstrated that she had a greater right to possession of FKC’s property than appellant did.  Therefore, Harkins met the statutory definition of owner.

Second, appellant’s bank records and his second confession support the finding that he intended to deprive FKC of its money.  Deprivation occurs when property is withheld from an owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner, or when property is restored only upon payment of a reward or compensation, or when property is disposed of in a manner that makes recovery of the property to the owner unlikely.  
Tex. Penal Code Ann.
 § 31.01(2) (Vernon Supp. 2004-05).  Appellant’s bank statements showed that he appropriated $67,658 from FKC.  The record contains no evidence that appellant intended to repay FKC when he appropriated the money.  Instead, appellant’s second confession indicated that he thought he could get away with stealing from FKC, that he continued stealing from FKC even after he paid off his bills, and that he spent most of the money he stole.  The evidence of appellant’s subsequent willingness to reimburse Pounders does not outweigh the evidence of appellant’s intent to permanently deprive FKC of its money at the time he appropriated it.  
See Roper v. State
, 917 S.W.2d 128, 131 (Tex. App.—Fort Worth 1996, pet. ref'd) (noting that "[w]e cannot infer intent that might have existed at a later date to a previous action").

Third, the record clearly shows that FKC, not Pounders, was the victim of the theft.  FKC’s bank records showed that $
67,658
 was taken from its account in ten credit reversal transactions.  Both Harkins and Pounders testified that appellant transferred $
67,658
 from FKC’s account to his own account. Moreover, appellant acknowledged stealing from FKC in his second confession. Appellant’s statement in his first confession, that he stole from BMS, does not outweigh the evidence showing that FKC was the true victim of the theft.
(footnote: 3)
 Because a rational jury could have found appellant guilty of the offense as charged and because the evidence of appellant’s guilt was not so weak or so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, we overrule appellant’s first and second points.

In his third point, appellant contends that his rights to due process of law and a jury trial were violated because the indictment did not allege, and the trial court’s instructions did not require the jury to find, all of the elements of theft.  Specifically, appellant complains that the jury could have convicted him without finding that Harkins was a “special owner” or that he intended to deprive Harkins of the property.  He argues that Harkins should have been identified as a “special owner,” rather than an “owner,” in the indictment and jury charge. He further argues that the trial court’s definition of “intent” in the jury charge allowed the jury to convict him if it found that he merely intended to appropriate the property, without finding that he intended to deprive Harkins of it. 

“The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.”  
In re Winship
, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970).  To secure a conviction for theft, the State must prove that an accused unlawfully appropriated property with intent to deprive the owner of property. 
 Tex. Penal Code Ann. 
§ 31.03(a) (Vernon Supp. 2004-05).

In this case, the indictment alleged as follows:

[Appellant] . . . on or about the 6th day of November 2002, did then and there on or about the above mentioned date and on or about the following listed dates, pursuant to one scheme or continuing course of conduct, unlawfully appropriate . . . property . . . by acquiring or otherwise exercising control over said property with the intent to deprive [Tina Harkins] . . . of the property, and the aggregate value of all the property appropriated was more than $20,000, but less than $100,000. 

The jury was instructed that “a person commits the offense of theft of property of the value of $20,000 or more but less that $100,000 if he unlawfully appropriates property with an intent to deprive the owner of the property and the value of the property stolen is $20,000 or more but less that $100,000.” 

Both the indictment and the jury charge required the State to prove, and the jury to find, each element of the offense of theft against appellant.  Therefore, his rights to due process and a jury trial were not violated.

Appellant contends, however, that the omission of the term “special owner” from the indictment and the jury charge rendered them defective.  We disagree.  The indictment properly alleged that Harkins was the owner of the property,
(footnote: 4) and the jury charge provided the statutory definition of owner.  Therefore, the jury was required to find that Harkins was the owner of the property in order to convict appellant.

Appellant also contends that the trial court’s definition of “intent” in the jury charge expanded the scope of the allegations against appellant.  The trial court defined intent as follows:  “[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.”  This definition clearly applied to the phrase “with the intent to deprive the owner.”  It did not, as appellant asserts, apply to the mere act of appropriating property.  Therefore, the jury charge did not allow the jury to convict appellant if it found that he merely intended to appropriate the property, but not deprive Harkins of it.  We overrule appellant’s third point.

Having overruled all of appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 August 4, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Before appellant began stealing from FKC, he used the credit card terminal to 
steal $1,015 from American Progressive Products, Pounders’s wife’s employer.

3:
FKC’s victim status did not shift to Pounders when he reimbursed FKC, as appellant contends.  
The offense of theft was complete when FKC’s money was in appellant’s possession.  
Masters v. State
, 437 S.W.2d 868, 869 (Tex. Crim. App. 1969); 
see also
 Donald v. State,  
453 S.W.2d 825, 828 (Tex. Crim. App. 1970) (holding that the fact that appellant, through one of his attorneys, later made partial restitution did not prevent prosecution for the original theft); 
Washington v. State
, 881 S.W.2d 187, 193 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (holding that the recovery of stolen property does not alter the nature of theft).

4:
When property is owned by a corporation, it is proper for the indictment to allege that the property was taken from the custody and control of a natural person acting for the corporation.  
Castillo v. State
, 469 S.W.2d 572, 573 (Tex. Crim. App. 1971); 
see also Freeman v. State
, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986) (noting that the Legislature gave the word "owner" an expansive definition to eliminate the distinctions between general and special owners and to give anyone with a "conceivable connection" to the property status as an owner); 
Villalobos v. State
, 951 S.W.2d 232, 234 (Tex. App.—El Paso 1997, no pet.) (noting that the State is not required to explain why a particular person is named as owner in a theft indictment).