COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-506-CR
 
  
LARRY 
D. CECIL, JR.                                                             APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 371ST DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM 
OPINION[1]
 
------------
        Appellant 
Larry D. Cecil appeals his conviction for theft. In three points, appellant 
challenges the legal and factual sufficiency of the evidence and contends that 
his rights to due process of law and a jury trial were violated because the 
indictment did not allege, and the trial court’s instructions did not require 
the jury to find, all of the elements of theft.  We affirm.
        In 
November 2002, Tina Harkins, the office manager at Frank Kent Cadillac (“FKC”), 
identified a series of unauthorized debits from an FKC account.  Ten 
transactions totaling $67,658 appeared as credit reversals on FKC’s bank 
statements.  Harkins notified FKC’s general manager, Dale Scruggs, and 
called FKC’s credit card processor, Nova Systems, Inc. (“Nova”), to report 
the problem. Nova determined that the perpetrator had debited FKC’s account by 
hand-keying personal account information into a credit card terminal containing 
FKC’s merchant information. After learning that the FKC funds had been 
transferred to appellant’s account at Community Credit Union and that 
appellant was an employee of Beneficial Merchant Services (“BMS”), the Nova 
subsidiary that actually processed FKC’s credit card transactions, Harkins 
contacted the president of BMS, Donnie Pounders, and asked him to investigate 
the matter.
        In 
the course of his investigation, Pounders obtained two written confessions from 
appellant. In the first confession, appellant admitted that he “stole $67,658 
from Beneficial Merchant Services, Inc. from the beginning of November to the 
middle of December 2002.” The next day, appellant faxed a second, more 
detailed confession to Pounders.
        In 
the second confession, appellant admitted that he had purchased a Nurit 2085 
credit card terminal, downloaded FKC’s merchant information to it, and 
credited his personal account with FKC funds multiple times throughout the month 
of November and the first part of December. Appellant wrote that his initial 
intention was to “pay back creditors and revolving bills that I had . . . not 
to hurt anyone.” He explained that he had thought that he could get away with 
it because his first transaction[2] “had gone 
through and there were no calls or anyone asking about it.” Appellant stated 
that he spent the money on “paying bills, gambling, drinking, and buying a few 
gifts for family and friends.”  Appellant also wrote that he had already 
returned some of the gifts, as well as a cashier’s check for $14,153 and 
$1,015 in cash, to Pounders because Pounders was going to repay the entire 
amount that appellant had stolen from FKC.  Pounders did, in fact, 
reimburse FKC in full for the stolen funds.
        Appellant 
was charged with theft of property of the value of $20,000 or more but less that 
$100,000. The indictment named Harkins as the owner of the property. At trial, 
the State’s witnesses included Harkins, Scruggs, and Pounders, and the trial 
court admitted appellant’s written confessions and appellant’s and FKC’s 
bank statements into evidence. The jury found appellant guilty of the offense as 
charged and assessed punishment at eighteen years’ confinement. The trial 
court sentenced him accordingly.
        In 
his first point, appellant contends that the evidence was legally and factually 
insufficient to support his conviction because the State did not prove 1) that 
Tina Harkins was the owner of the money taken from the FKC account, 2) that 
appellant intended to permanently deprive the owner of the money, or 3) that FKC 
was the victim of the theft.
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        In 
reviewing a point asserting that a finding is against the great weight and 
preponderance of the evidence, we must consider and weigh all of the evidence 
and set aside the finding only if the evidence is so weak or the finding so 
contrary to the great weight and preponderance of the evidence as to be clearly 
wrong and unjust. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 
2001); In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex. 
1951). We are to give deference to the fact finder’s determinations, including 
determinations involving the credibility and demeanor of witnesses. Zuniga v. 
State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004); Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for 
that of the fact finder’s. Zuniga, 144 S.W.3d at 482.
        After 
reviewing the evidence under the applicable standards of review, we find that 
the evidence is both legally and factually sufficient to support appellant’s 
conviction. First, the record establishes that Harkins was the owner of the 
property. The penal code defines "owner" as a person who: (A) has 
title to the property, possession of the property, whether lawful or not, or a 
greater right to possession of the property than the actor; or (B) is a holder 
in due course of a negotiable instrument. Tex. 
Penal Code Ann. § 1.07(a)(35) (Vernon Supp. 2004-05). Harkins’s 
testimony that she was the FKC employee in charge of reconciling FKC’s 
financial statements demonstrated that she had a greater right to possession of 
FKC’s property than appellant did. Therefore, Harkins met the statutory 
definition of owner.
        Second, 
appellant’s bank records and his second confession support the finding that he 
intended to deprive FKC of its money. Deprivation occurs when property is 
withheld from an owner permanently or for so extended a period of time that a 
major portion of the value or enjoyment of the property is lost to the owner, or 
when property is restored only upon payment of a reward or compensation, or when 
property is disposed of in a manner that makes recovery of the property to the 
owner unlikely. Tex. Penal Code Ann. 
§ 31.01(2) (Vernon Supp. 2004-05). Appellant’s bank statements showed that he 
appropriated $67,658 from FKC. The record contains no evidence that appellant 
intended to repay FKC when he appropriated the money. Instead, appellant’s 
second confession indicated that he thought he could get away with stealing from 
FKC, that he continued stealing from FKC even after he paid off his bills, and 
that he spent most of the money he stole. The evidence of appellant’s 
subsequent willingness to reimburse Pounders does not outweigh the evidence of 
appellant’s intent to permanently deprive FKC of its money at the time he 
appropriated it. See Roper v. State, 917 S.W.2d 128, 131 (Tex. 
App.—Fort Worth 1996, pet. ref'd) (noting that "[w]e cannot infer intent 
that might have existed at a later date to a previous action").
        Third, 
the record clearly shows that FKC, not Pounders, was the victim of the theft. 
FKC’s bank records showed that $67,658 was taken from its account in ten 
credit reversal transactions. Both Harkins and Pounders testified that appellant 
transferred $67,658 from FKC’s account to his own account. Moreover, appellant 
acknowledged stealing from FKC in his second confession. Appellant’s statement 
in his first confession, that he stole from BMS, does not outweigh the evidence 
showing that FKC was the true victim of the theft.[3]
        Because 
a rational jury could have found appellant guilty of the offense as charged and 
because the evidence of appellant’s guilt was not so weak or so contrary to 
the great weight and preponderance of the evidence as to be manifestly unjust, 
we overrule appellant’s first and second points.
        In 
his third point, appellant contends that his rights to due process of law and a 
jury trial were violated because the indictment did not allege, and the trial 
court’s instructions did not require the jury to find, all of the elements of 
theft. Specifically, appellant complains that the jury could have convicted him 
without finding that Harkins was a “special owner” or that he intended to 
deprive Harkins of the property. He argues that Harkins should have been 
identified as a “special owner,” rather than an “owner,” in the 
indictment and jury charge. He further argues that the trial court’s 
definition of “intent” in the jury charge allowed the jury to convict him if 
it found that he merely intended to appropriate the property, without finding 
that he intended to deprive Harkins of it.
        “The 
Due Process Clause protects the accused against conviction except upon proof 
beyond a reasonable doubt of every fact necessary to constitute the crime with 
which he is charged.” In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 
1073 (1970). To secure a conviction for theft, the State must prove that an 
accused unlawfully appropriated property with intent to deprive the owner of 
property. Tex. Penal Code Ann. § 
31.03(a) (Vernon Supp. 2004-05).
        In 
this case, the indictment alleged as follows:
  
[Appellant] . . . on or about the 6th day of November 2002, did then and there 
on or about the above mentioned date and on or about the following listed dates, 
pursuant to one scheme or continuing course of conduct, unlawfully appropriate . 
. . property . . . by acquiring or otherwise exercising control over said 
property with the intent to deprive [Tina Harkins] . . . of the property, and 
the aggregate value of all the property appropriated was more than $20,000, but 
less than $100,000.
 
 
        The 
jury was instructed that “a person commits the offense of theft of property of 
the value of $20,000 or more but less that $100,000 if he unlawfully 
appropriates property with an intent to deprive the owner of the property and 
the value of the property stolen is $20,000 or more but less that $100,000.”
        Both 
the indictment and the jury charge required the State to prove, and the jury to 
find, each element of the offense of theft against appellant. Therefore, his 
rights to due process and a jury trial were not violated.
        Appellant 
contends, however, that the omission of the term “special owner” from the 
indictment and the jury charge rendered them defective. We disagree. The 
indictment properly alleged that Harkins was the owner of the property,[4] and the jury charge provided the statutory definition of 
owner. Therefore, the jury was required to find that Harkins was the owner of 
the property in order to convict appellant.
        Appellant 
also contends that the trial court’s definition of “intent” in the jury 
charge expanded the scope of the allegations against appellant. The trial court 
defined intent as follows: “[a] person acts intentionally, or with intent, 
with respect to the nature of his conduct or to a result of his conduct when it 
is his conscious objective or desire to engage in the conduct or cause the 
result.” This definition clearly applied to the phrase “with the intent to 
deprive the owner.” It did not, as appellant asserts, apply to the mere act of 
appropriating property. Therefore, the jury charge did not allow the jury to 
convict appellant if it found that he merely intended to appropriate the 
property, but not deprive Harkins of it. We overrule appellant’s third point.
        Having 
overruled all of appellant’s points, we affirm the trial court’s judgment.
    
                                                                  PER 
CURIAM
 
 
 
PANEL 
A:   CAYCE, C.J.; GARDNER and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
August 4, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Before appellant began stealing from FKC, he used the credit card terminal to 
steal $1,015 from American Progressive Products, Pounders’s wife’s employer.
3.  
FKC’s victim status did not shift to Pounders when he reimbursed FKC, as 
appellant contends. The offense of theft was complete when FKC’s money was in 
appellant’s possession. Masters v. State, 437 S.W.2d 868, 869 (Tex. 
Crim. App. 1969); see also Donald v. State, 453 S.W.2d 825, 828 (Tex. 
Crim. App. 1970) (holding that the fact that appellant, through one of his 
attorneys, later made partial restitution did not prevent prosecution for the 
original theft); Washington v. State, 881 S.W.2d 187, 193 (Tex. 
App.—Houston [1st Dist.] 1994, no pet.) (holding that the recovery of stolen 
property does not alter the nature of theft).
4.  
When property is owned by a corporation, it is proper for the indictment to 
allege that the property was taken from the custody and control of a natural 
person acting for the corporation. Castillo v. State, 469 S.W.2d 572, 573 
(Tex. Crim. App. 1971); see also Freeman v. State, 707 S.W.2d 597, 603 
(Tex. Crim. App. 1986) (noting that the Legislature gave the word 
"owner" an expansive definition to eliminate the distinctions between 
general and special owners and to give anyone with a "conceivable 
connection" to the property status as an owner); Villalobos v. State, 
951 S.W.2d 232, 234 (Tex. App.—El Paso 1997, no pet.) (noting that the State 
is not required to explain why a particular person is named as owner in a theft 
indictment).