**Opinion filed January 22, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00083-CR

_____

## KRISTI JONES A/K/A KRISTI ALANIZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 27484A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Kristi Jones a/k/a Kristi Alaniz, Appellant, of the offense of burglary of a habitation with the intent to commit theft. That same jury assessed her punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for two years. We affirm.

In her first issue on appeal, Appellant claims that the evidence is insufficient to prove the required *mens rea* for theft because there was a bona fide dispute as to the ownership of the personal property involved. Appellant asserts in her second

issue on appeal that the evidence is insufficient to show that she had the intent to deprive the rightful owner of the property because Appellant believed that she was retrieving the property for the rightful owner of the property.

Richard Kennedy and his wife, Tracy Kennedy, entered into a contract with Sharon Winchester whereby the Kennedys were to purchase from Winchester the real property located at 1956 North Willis in Abilene. The contract, a handwritten one about one-third of a page in length, called for a purchase price of $51,700. There were no provisions in the contract relative to any personal property on the premises.

Richard testified that, before the contract was signed, he and his wife went to look at the property. They learned that Winchester was moving into a travel trailer and had no place to move any of her belongings other than her clothing. Winchester disagreed with some of that testimony. She testified that her verbal agreement was that the Kennedys were to receive the heavier things that she could not move. Later, after the parties had signed the contract, and before the closing took place, Winchester sold some of the items that were in the house, and the parties amended the contract to show a reduced price of $50,000.

Chris Westbrook, an attorney for an Abilene title company, closed the transaction between the Kennedys and Winchester on October 14, 2016. Westbrook testified that, in a cash transaction, as here, buyers take ownership upon closing.

Tracy testified that, after the closing, she and her husband took Winchester to the house at 1956 North Willis. Winchester "picked up some makeup and stuff like that and everything that belonged to her, she put in the backyard." The Kennedys then gave Winchester a ride to a house near Grape Street.

On the same day of the closing, the Kennedys had their employees change the locks on the doors to the house and "screw[] all the windows down" so that they "couldn't be pried open." According to Richard, he had told Winchester that she

2

could not be at the property without the Kennedys or unless she had "direct permission."

In the evening of October 17, three days after the closing, Tracy drove by the property. There were several people there, including Appellant, who were loading things from the house onto a trailer and into vehicles; they "were taking everything from the house." Entry into the house had been accomplished by removing a piece of wood from around a window air conditioner.[1]

Prior to the time that Tracy saw Appellant at the house on the evening of October 17, she had talked to Appellant on the phone. Appellant had called her and had asked for a time that she could meet to get the rest of Winchester's property out of the house. Tracy informed Appellant that Winchester already had her property out of the house. She further testified that she "told [Appellant] point blank that they were not allowed on the property." She had also told Winchester that they were not allowed on the property. The Kennedys both testified that they never gave anyone permission to take anything from the house. Winchester testified that she never told Appellant to get her property. However, Winchester said that she knew that Appellant was going to go get the property but that she told "them" "that [she] did not think that it was in their best interest." The prosecutor asked Winchester: "Did you tell [Appellant] you had a right to some of that stuff in that home to go get?" Winchester answered, "No."

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict to determine whether any rational

---

[1]There are no issues in this appeal that concern the entry into the house or the actual removal of the personal property from it.

trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inference raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

As far as the facts of this case are concerned, a person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation with intent to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2019). A person commits theft if the person, with the intent to deprive the owner of property, unlawfully appropriates that property, without the effective consent of the owner. PENAL § 31.03(a). An "owner" is a person who has title to the property; possession of the property, whether lawful or not; or has a greater right to possession of the property than the actor. PENAL § 1.07(a)(35)(A) (West Supp. 2020).

Appellant maintains that, because there was a bona fide dispute over the ownership of the property, the evidence is insufficient to prove the *mens rea* necessary for theft. Appellant bases her argument on cases in which courts have held that, where there is a bona fide dispute as to ownership of property, criminal intent is negated. We have considered this issue before in an appeal that involved the theft of a bicycle. *Tilley v. State*, No. 11-08-00109-CR, 2009 WL 2680530 (Tex. App.—Eastland Aug. 28, 2009, pet. ref'd) (mem. op., not designated for publication). In *Tilley*, we cited *Hann* for the general proposition that, "[i]n a theft case of personalty, a conviction cannot be upheld if ownership of the property is

4

disputed *between the complaining witness and the defendant*." *Id.* at \*2 (emphasis added) (citing *Hann v. State*, 771 S.W.2d 731, 733 (Tex. App.—Fort Worth 1989, no pet.)). However, we held that the general proposition was not applicable to the facts in *Tilley* because "[t]here [was] not a bona fide dispute over the ownership of the bicycle *between [the victim] and appellant* because appellant did not acquire ownership of the bicycle by allegedly purchasing it from the person who stole it from [the victim]." *Id.* at \*2 (emphasis added).

Appellant relies on *Bokor v. State* to support her contention related to *mens rea* and a bona fide dispute as to the rightful ownership of personalty. *See Bokor v. State*, 114 S.W.3d 558 (Tex. App.—Fort Worth 2002, no pet.). *Bokor* is a case that also involved a contractual dispute between Bokor and the victim. The court noted that the "case can be characterized as a simple case of a civil contract dispute." *Id.* at 561 (citing *Roper v. State*, 917 S.W.2d 128, 132–33 (Tex. App.—Fort Worth 1996, pet. ref'd)). The court went on to write: "If a bona fide dispute exists as to the ownership of the property, then the evidence is . . . insufficient to sustain a theft conviction." *Id.* at 560.

*Roper* is another theft case in which the accused and the victim were parties to a contractual dispute. *Roper*, 917 S.W.2d at 132. There, the court noted: "Theft convictions resulting from otherwise civil contractual disputes may warrant reversal for insufficient evidence where there is no evidence supporting the requisite criminal intent." *Id.* at 132.

The cases that we have outlined above show that the existence of a bona fide dispute between the parties involved in that dispute is a circumstance that might affect the *mens rea* associated with theft. That is because the ultimate focus is not simply on the civil dispute nature of the circumstances but, rather, is centered on whether an accused had the requisite intent to unlawfully appropriate the property. *Potter v. State*, No. 06-11-00204-CR, 2012 WL 1556093, at \*3 (Tex. App.—

5

Texarkana May 3, 2012, no pet.) (mem. op., not designated for publication). That is the element that is most often affected by the existence of a bona fide property dispute. That consideration is not present in cases in which an accused is not a party to the dispute.

Even though the evidence in this case might support the existence of a bona fide dispute as to ownership of some of the property involved, Appellant had no horse in that race. As a non-party to the dispute, Appellant cannot benefit from the general proposition outlined in those cases that involve disputes between an accused and the alleged victim.

Because there has been no issue raised as to whether Appellant did, in fact, appropriate the property involved in this case, the question then becomes: Was that appropriation unlawful? Lawful acquisitive conduct is distinguished from theft in that, in circumstances that involve theft, the acquisition is without the effective consent of the owner at the time of the deprivation. *Id.*

In the case before us, regardless of who the owner was, Appellant did not have consent to take the property. The Kennedys testified that they had not given anyone permission to take anything from the house. Tracy testified further that Appellant had contacted her about getting Winchester's property. She told Appellant that Winchester's property was already out of the house. She also "told [Appellant] point blank that they were not allowed on the property."

Neither did Winchester consent to Appellant's taking of the property. Winchester testified that she did not tell Appellant to go get her property. She knew that Appellant was going to the house, but Winchester told "them" that she "did not think that it was in their best interest." The prosecutor asked Winchester whether she had told Appellant that she (Winchester) "had a right to some of that stuff in that home to go get." Winchester answered, "No."

None of the purported owners of the property gave effective consent to Appellant that would allow her to remove any of the property from the house. Therefore, Appellant took the property unlawfully. *See id.* We hold that a rational jury could have found from the evidence beyond a reasonable doubt that Appellant committed burglary of a habitation with the intent to commit theft as charged in the indictment. We overrule Appellant's first issue on appeal.

In her second issue on appeal, Appellant maintains that she could not have had the intent to deprive the rightful owner of the property because she thought that she was retrieving the property for the rightful owner, Winchester. Again, regardless of Appellant's belief, she had no permission from anyone to take any of the property from the house. Additionally, at least some of the property—the heavy things—as Winchester admitted, belonged to the Kennedys. Furthermore, Tracy testified that she had told Appellant that none of the property in the house belonged to Winchester. A rational jury could have rejected Appellant's claim as to her mistaken belief. We overrule Appellant's second issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT

SENIOR CHIEF JUSTICE

January 22, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[2]

Williams, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.