Deborah HUETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–96–01287–CR

Court of Appeals of Texas,
Dallas.

May 14, 1998.

120

Renie McClellan, Dallas, for Appellant.

Lorraine A. Raggio, Assistant District Attorney, Dallas, for State.

Before THOMAS, C.J., FARRIS, Former Justice,[1] and MILLER,[2] Judge.

## OPINION

CHUCK MILLER, Justice.

Appellant Deborah Huett was charged by indictment with the offense of misapplication of fiduciary property of an aggregate value of at least $20,000 or more, but less than $100,000.[3] On June 10, 1996, she entered a plea of not guilty to a jury, and trial commenced. At the conclusion of the guilt/innocence stage of the trial, she was found guilty. Appellant elected to have the trial court set punishment, and the court sentenced her to serve ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Imposition of sentence was suspended, and Huett was placed on community supervision for a period of ten years. On appeal, Huett brings four points of error, all challenging the legal and factual sufficiency of the evidence. We affirm the trial court's judgment.

The victims named in the indictment, Harry Simon and Eric Kostbade, both invested money in Offshore Resources Corporation, hereinafter referred to as "ORC." Each received stock certificates for amounts of stock commensurate with his investment. The certificates were signed by W. Michael Huett, President, and Deborah Huett, Acting Secretary.[4]

Simon testified that the $75,000 he invested was to be used solely for securing oil leases on land for the purpose of drilling. Simon never met Deborah Huett, but he did have telephone conversations with her.

Kostbade testified that on the face of his stock certificates was written that the money he invested, $25,000, was to be used solely for venture capital.[5] Kostbade, through personal meetings with Deborah Huett and others, was convinced that Deborah Huett knew

---

1. The Honorable David F. Farris, Former Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Chuck Miller, Judge, Texas Court of Criminal Appeals, Retired, sitting by assignment.

3. § 32.45. Misapplication of Fiduciary Property or Property of Financial Institution

    (a) For purposes of this section:
    (1) "Fiduciary" includes:
    (A) trustee, guardian, administrator, executor, conservator, and receiver;
    (B) any other person acting in a fiduciary capacity, but not a commercial bailee unless the commercial bailee is a party in a motor fuel sales agreement with a distributor or supplier, as those terms are defined by Section 153.001, Tax Code; and
    (C) an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary.
    (2) "Misapply" means deal with property contrary to:
    (A) an agreement under which the fiduciary holds the property; or
    (B) a law prescribing the custody or disposition of the property.

    (b) A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.
    (c) An offense under this section is:
    * * *
    (5) a felony of the third degree if the value of the property misapplied is $20,000 or more but less than $100,000; ...
    Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 941, *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3652 (subsequent amendments not listed) (current version at TEX. PENAL CODE ANN. § 32.45 (Vernon 1994 & Supp. 1998)).

4. Evidence showed that the title "Secretary," in the corporate sense, meant a corporate officer named by the board of directors of a corporation.

5. Evidence showed that "venture capital," in the corporate sense, connoted that the capital, *i.e.*, the money, would be used in the processes of the corporation and carried with it a fiduciary duty to use the money in the start up process of the corporation.

**122**

the money from investors was to be used solely for obtaining drilling leases and for developing those leases. Kostbade had the opportunity to observe the relationship between Deborah Huett and Michael Huett, and he concluded that Deborah Huett was knowledgeable of ORC's business, was a decision maker in the corporation, and was involved in ORC's finances. Upon being shown bank statements from ORC's commercial bank account at trial, Kostbade testified that he never authorized the specific expenditures or those types of expenditures.[6] He added that such expenditures were not venture capital expenditures and were in fact a breach of fiduciary duty. Deborah Huett signed many of the checks referred to by Kostbade.

Mona Lisa Camarillo was an employee of ORC who worked in the Huett's home office. The Huetts hired her as a fund raiser and told her that ORC's fund raising was for the purpose of oil lease acquisitions and that investors were to get part of the properties in which ORC invested. Deborah Huett was, in Camarillo's opinion, in charge of everything from the issuance of ORC stock to the handling of ORC's checking accounts. Deborah Huett wrote all the checks, issued the stock, and was a major decision maker in the corporation. Over time, Camarillo saw some of the investors' money used for house payments, although the home office only occupied one room in the house, and for personal jewelry. After six months of employment and seeing several hundred thousand dollars raised from investors but used for purposes other than oil lease acquisitions, Camarillo confronted Deborah Huett and demanded that future monies be put in escrow accounts. Deborah Huett's reaction was anger and defiance. Deborah Huett stated that the money was hers and that she could do with it what she wanted. Camarillo then left ORC's employ.

Shiela Powell, a securities investigator with the State of Texas Securities Board, testified that she reviewed ORC's bank records and checking accounts before testifying.

She summarized the commercial checking account, for which Deborah Huett and Michael Huett were signatories for the months of September and October 1994. Powell's summary revealed that ORC's deposits from that period amounted to $25,000 from Kostbade (the deposit that opened the account), $67,500 from Simon, and $700 from Camarillo. Total deposits were in excess of $93,000. Powell's summary also revealed that Deborah Huett wrote all but ten of the ORC checks during the period; Michael Huett wrote the remaining ten checks. Expenditures for the period that could arguably have been for business purposes, in Powell's opinion, amounted to about $20,000. None of the expenditures for the period went to acquire oil leases. Non-business expenditures that were attributable to Deborah Huett, because her signature was on the ORC checks for these expenditures, were in the aggregate sum of $61,786.51. These checks included the ones shown to Kostbade for Rolls Royce car payments, church donations, and personal and food items. With this evidence, the State rested.

Deborah Huett was the only defense witness. She testified that her husband controlled all of the ORC operations and the money ORC spent and that everything she did was at his direction or with his permission. She added that she was only a signatory on the accounts for a brief time and was corporate secretary in name only. She admitted to being a corporate officer for a short time, but she reiterated that her actions were entirely directed by her husband, Michael Huett.

■■■ With this evidentiary review complete, we now turn to the challenges to the legal and factual sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, the question that a reviewing court must determine is whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v.*

6. Expenditures included the purchase of Rolls Royce and BMW automobiles, paying employees' salaries, buying groceries, buying athletic shoes, buying contact lenses, and more of a similar personal nature. There was also a $500 church donation made. Monthly house payments of approximately $5000 were also made out of the account.

*Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). In such an attack on the legal sufficiency of the evidence, an appellate court acknowledges that the trier of fact is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The fact finder is free to believe or disbelieve the testimony of all witnesses, to reconcile or not reconcile conflicts in testimony, and to accept or reject any or all of the evidence produced by the respective parties. *See Upton v. State,* 853 S.W.2d 548, 552 (Tex.Crim.App.1993); *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim. App.1992).

■■■ When reviewing the factual sufficiency of the evidence, an appellate court looks to see if the verdict, or other factual finding, is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *See Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Only when that test is met may we vacate the conviction and remand the case for a new trial. *See Clewis,* 922 S.W.2d at 133–34. We consider all of the evidence in the record related to appellant's sufficiency challenge, comparing the evidence which tends to prove the challenged verdict or fact with the evidence which tends to disprove that verdict or fact. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). In doing so, we consider and weigh all of the evidence without the prism of "in the light most favorable to the prosecution," as required under *Jackson. See Cain,* 958 S.W.2d at 408; *Clewis,* 922 S.W.2d at 129. This amounts to a comparative weight of the evidence review. *See Roper v. State,* 917 S.W.2d 128, 132 (Tex.App.—Fort Worth 1996, pet. ref'd). An appellate court may not substitute its own judgment for that of the judge or jury. *See id.* Appellate courts may

not substantially intrude upon the trial court or jury's role as the sole judge of the weight and credibility of the witnesses. *See Santellan,* 939 S.W.2d at 164.

Returning to the case at hand, Deborah Huett argues in points one and two that the State's evidence is, respectively, legally and factually insufficient to prove that the funds in question belonged to ORC. She notes that the indictment alleged that ORC was the "owner" of the funds misapplied. ORC, the evidence showed, was chartered on July 2, 1979, under the Texas Business Corporation Act. *See* TEX. BUS. CORP. ACT ANN. art. 3.04 (Vernon 1980 & Supp.1998). Evidence further showed that the charter was involuntarily dissolved by operation of law on May 16, 1983. *See id.* art. 7.01. Huett argues that since ORC was not a legal corporation at the time of the alleged misappropriation, it could not be an owner as that term is defined by the penal code.

The penal code defines "owner" as an individual, corporation, or association that has title to the property, possession of the property, or a greater right to possession of the property than the actor. *See* TEX. PENAL CODE ANN. § 1.07(35)(A) & (38) (Vernon 1994). The indictment alleged, in pertinent part, that Deborah Huett misapplied money invested by Simon and Kostbade, which Deborah Huett held as a fiduciary and which was owned by ORC, by misapplying the money in a manner that placed the funds at a substantial risk of loss to ORC and to Simon and Kostbade for whose benefit the money was held by ORC.[7] There is no allegation that ORC was a legal entity, only that it was an owner. The name, Offshore Resources Corporation, is but a name as far as the allegations in the indictment are concerned, no different than a name like Offshore Resources Oil, or any other name. As long as the proof showed that (1) ORC was in fact the name of the owner, and (2) ORC is either a person, corporation, or association so as to qualify under the definition of "owner," the State has met its burden of proof under the allegations in the indictment.

---

**7.** See the indictment attached hereto.

While ORC may not have been a legally chartered corporation during the time of the thefts, it certainly was, under the evidence, an association. An "association" is a body of persons acting together, without a charter, but on methods and forms used by corporations, and for prosecution of some common enterprise. *See Penrod Drilling Co. v. Johnson,* 414 F.2d 1217, 1222 (5th Cir.1969), *cert. denied,* 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 495 (1970). It is a voluntary group of persons, without charter, formed by mutual consent, for purposes of promoting common enterprises or prosecuting common objectives. *See Cox v. Thee Evergreen Church,* 836 S.W.2d 167, 169, (Tex.1992); *see also Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598, 599 (Tex.App.—Houston [1st Dist.] 1991, no writ).

The evidence presented showed that ORC was a business entity formed and operated by the Huetts. It was perhaps unchartered at the time of the events in question, but it operated with corporate methodology and terminology. It had a commercial checking account opened and operated in the name of Offshore Resources Corporation. ORC had a common publicized purpose and mission, to engage in the oil lease business. Under the name of Offshore Resources Corporation significant fund raising was done to accomplish ORC's enterprise. All of these factors combine to lead us to the inescapable conclusion that the evidence was legally and factually sufficient to prove that ORC was an association as contemplated by the penal code. *See* TEX. PENAL CODE ANN. § 1.07(38) (Vernon 1994). The evidence is, therefore, sufficient, under the challenges brought forward in points one and two, to prove that the money misapplied by Deborah Huett was owned by Offshore Resources Corporation. Points one and two are overruled.

In points three and four, Deborah Huett asserts that the State's evidence is, respectively, legally and factually insufficient to prove that she engaged in any dealing that was contrary to an applicable agreement with the victims. In this vein, the indictment alleged, in pertinent part, that Deborah Huett misapplied money invested by Simon and Kostbade in that she applied the money contrary to the terms and conditions of the agreement under which Simon and Kostbade invested with ORC. As set out in footnote three, section 32.45 of the penal code defines "misapply" as dealing with property contrary to an agreement under which the fiduciary holds the property. *See* TEX. PENAL CODE ANN. § 32.45(a)(2)(A) (Vernon 1994 & Supp.1998). "Fiduciary" includes an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary. *See* TEX. PENAL CODE ANN. § 32.45(a)(1)(C) (Vernon 1994 & Supp.1998). In common parlance, fiduciary refers to a person or entity having a duty, created by his undertaking, to act primarily for another's benefit in matters connected to the undertaking. *See* BLACK'S LAW DICTIONARY 625 (6th ed.1990).

ORC, which we have concluded was a business entity known as an association, was, by all the evidence, the entity in which Simon and Kostbade invested money. ORC, according to the overwhelming evidence, existed for the purpose of engaging in the oil lease business. There was ample evidence from Simon and Kostbade that they invested their money under the agreement that the money would be used for procurement of oil leases and oil lease property. Camarillo verified that this was the understanding upon which ORC's fund raising was done under the direction of the Huetts. Powell testified that none of Simon's and Kostbade's money was used for these purposes. There was evidence from Simon, Kostbade, Camarillo, and Powell that Deborah Huett spent that very money for reasons other than the agreed purpose. The bank statements revealed, in the witnesses' lay and expert opinions, a great number of personal expenditures unrelated to the oil lease business and directly related to the personal use and benefit of the Huetts. Kostbade and Camarillo testified that Deborah Huett was a major player, decision maker, and corporate officer in ORC. Kostbade, a former law school professor, holder of an MBA in finance, and an economics professor with fifteen years' experience, testified that Deborah Huett was acting in a fiduciary capacity in her position

with ORC. One acts in a fiduciary capacity when the money or property that he handles is not his own or for his own benefit, but stands for the benefit of another person. *See id.*

Considering this evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that Simon and Kostbade had an agreement under which ORC was a fiduciary and held their monetary investment, that Deborah Huett was an officer, manager, employee, or agent of ORC carrying on fiduciary functions on behalf of ORC, and that she spent or dealt with Simon's and Kostbade's monetary investment contrary to the agreement under which ORC held Simon's and Kostbade's monetary investment. Thus, the jury could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781 *Emery,* 881 S.W.2d at 705.

This evidence, without the prism of "in the light most favorable to the verdict," combined with all of the evidence, including Deborah Huett's testimony that she was but a pawn of her husband, presented at most a conflict in the testimony to be resolved by the jury. Its decision to give more weight and credibility to Simon, Kostbade, Camarillo, and Powell than to Deborah Huett is not, as we observe and weigh the evidence, so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 135. Points three and four are overruled.

The judgment of the trial court is affirmed.

*Re-indictment*

DEFENDANT __HUETT, DEBORAH ANNA__ CHARGE __MISAPP. FID. PROP. 20K__

ADDRESS __6015 JERICHO CT., DALLAS, TX 75248__ LOCATION __AT LARGE__

FILING AGENCY __DA/SCD__ DATE FILED_____COURT _____

COMPLAINANT __HARRY D. SIMON__

C/C _____ F95-0267&__QU__

---

## TRUE BILL OF INDICTMENT

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS: the Grand Jury of Dallas County, State of Texas, duly organized at the JULY Term, A.D. 1995 of the 204TH JUDICIAL District Court , Dallas County, in said court at said Term, do present that one

### DEBORAH ANNA HUETT

hereinafter styled Defendant, on or about the dates hereinafter alleged and before the presentment of this indictment, in Dallas County, Texas, did unlawfully, then and there, knowingly and intentionally misapply property, to-wit: current money of the United States of America, as invested by Harry D. Simon and Eric Kostbade with Offshore Resources Corporation, in the following amounts:

HARRY D. SIMON

| DATE OF APPROPRIATION | AMOUNT OF APPROPRIATION |
|---|---|
| October 19, 1994 | $ 100.00 |
| October 20, 1994 | $ 50.50 |
| October 20, 1994 | $ 25.00 |
| October 20, 1994 | $ 17.60 |
| October 21, 1994 | $ 300.00 |
| October 24, 1994 | $ 100.00 |
| October 24, 1994 | $ 2,500.00 |
| October 24, 1994 | $ 4,595.00 |
| October 24, 1994 | $ 2,000.00 |
| October 24, 1994 | $ 1,515.00 |
| October 24, 1994 | $ 1,515.00 |
| October 24, 1994 | $ 4,795.00 |
| October 24, 1994 | $ 370.00 |
| October 24, 1994 | $ 43.27 |
| October 24, 1994 | $ 53.00 |

INDICTMENT/HUETT, DEBORAH A./PAGE 1

000003

| DATE OF APPROPRIATION | AMOUNT OF APPROPRIATION |
|---|---|
| October 24, 1994 | $ 456.85 |
| October 24, 1994 | $ 1,633.56 |
| October 25, 1994 | $ 50.50 |
| October 25, 1994 | $ 800.00 |
| October 25, 1994 | $ 700.00 |
| October 25, 1994 | $ 3,000.00 |
| October 25, 1994 | $ 2,297.81 |
| October 25, 1994 | $ 16,000.00 |
| October 25, 1994 | $ 1,152.05 |
| October 25, 1994 | $ 2,625.06 |
| October 25, 1994 | $ 9.49 |
| October 25, 1994 | $ 520.00 |
| October 25, 1994 | $ 96.22 |
| October 25, 1994 | $ 48.23 |
| October 25, 1994 | $ 37.89 |
| October 25, 1994 | $ 6,900.00 |
| October 25, 1994 | $ 17.32 |
| October 25, 1994 | $ 36.78 |
| October 25, 1994 | $ 53.70 |
| October 25, 1994 | $ 547.67 |
| October 26, 1994 | $ 105.00 |
| October 26, 1994 | $ 75.00 |
| October 26, 1994 | $ 119.56 |
| October 26, 1994 | $ 100.00 |
| October 26, 1994 | $ 1,233.00 |
| October 26, 1994 | $ 449.78 |
| October 26, 1994 | $ 1,000.00 |
| October 26, 1994 | $ 325.00 |
| October 26, 1994 | $ 23.44 |
| October 26, 1994 | $ 232.63 |
| October 27, 1994 | $ 186.19 |
| October 28, 1994 | $ 622.44 |
| October 31, 1994 | $ 59.06 |
| October 31, 1994 | $ 496.10 |
| October 31, 1994 | $ 4,529.56 |
| October 31, 1994 | $ 245.05 |
| October 31, 1994 | $ 500.00 |

INDICTMENT/HUETT, DEBORAH A./PAGE 2

000004

ERIC KOSTBADE

| DATE OF APPROPRIATION | AMOUNT OF APPROPRIATION |
| --- | --- |
| September 6, 1994 | $ 1,774.00 |
| September 6, 1994 | $ 4,595.00 |
| September 6, 1994 | $ 1,271.00 |
| September 6, 1994 | $ 100.00 |
| September 7, 1994 | $ 209.49 |
| September 7, 1994 | $ 2,500.00 |
| September 7, 1994 | $ 1,100.00 |
| September 7, 1994 | $ 4,000.00 |
| September 7, 1994 | $ 70.14 |
| September 7, 1994 | $ 100.00 |
| September 7, 1994 | $ 20.00 |
| September 9, 1994 | $ 64.90 |
| September 9, 1994 | $ 1,457.00 |
| September 12, 1994 | $ 300.00 |
| September 12, 1994 | $ 500.00 |
| September 12, 1994 | $ 300.00 |
| September 13, 1994 | $ 57.85 |
| September 14, 1994 | $ 600.00 |
| September 14, 1994 | $ 500.00 |
| September 14, 1994 | $ 31.47 |
| September 14, 1994 | $ 60.00 |
| September 15, 1994 | $ 100.00 |

INDICTMENT/HUETT, DEBORAH A./PAGE 3

which she held as a fiduciary, in that she was a person acting in a fiduciary capacity, but not as a commercial bailee, to-wit: as an officer of Offshore Resources Corporation and as an agent of William Michael Huett, chief executive officer of Offshore Resources Corporation, and the Defendant did misapply the said property, which was owned by Offshore Resources Corporation, contrary to the terms and conditions of the agreement under which Harry D. Simon and Eric Kostbade invested with Offshore Resources Corporation, and the said Defendant did misapply the said property in a manner that involved substantial risk of loss of said property to Offshore Resources Corporation, and to Harry D. Simon and Eric Kostbade for whose benefit the property was held by Offshore Resources Corporation, in that the said property was used by Deborah Anna Huett for her own personal use and benefit,

And all of said property was misapplied, as alleged, pursuant to the same scheme and continuing course of conduct, and the aggregate value of the property misapplied was at least $20,000.00 or more, but less than $100,000.00.

against the peace and dignity of the State.

| | |
|---|---|
| ___JOHN VANCE___<br>Criminal District Attorney of<br>Dallas County, Texas | Foreman of the Grand Jury |

INDICTMENT/HUETT, DEBORAH A./PAGE 4