MEMORANDUM OPINION



No. 04-06-00855-CR



Kevin Lee HALE,


Appellant



v.



The STATE of Texas,


Appellee



From the County Court at Law, Kerr County, Texas


Trial Court No. CR06-1648


Honorable Spencer W. Brown, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: June 6, 2007 


AFFIRMED


 Kevin Lee Hale appeals his conviction of misapplication of fiduciary property challenging
the sufficiency of the evidence to support his conviction. We affirm the trial court's judgment.

Background


 William Aycock, an investigator with the city marshall's office, was contacted by Jim Bailey,
a den leader of a local cub scout pack. Bailey requested an investigation into $825.00 in missing
funds from the cub scout bank account. Bailey stated that Hale was the last person in control of the
money which was kept in a Wells Fargo bank account. 

 The Wells Fargo account was opened on September 3, 2004 with Michael Mann as the
authorized signer. Hale was added as an authorized signer on September 29, 2004. The address for
the account as of November 18, 2004, was Hale's address. On November 3, 2004, an ATM
withdrawal was made for $20.00. On December 23, 2004, a deposit was made for $600.90. The
deposit consisted of two checks payable to Pack 812 totaling $849.90, with a cash withdrawal of
$249.00. One of the checks in the amount of $837.90 payable to Cub Scout Pack 812 c/o Michael
Mann was for the popcorn fundraiser, and Michael Mann's name was misspelled in the endorsement. 
In January, February, March and April of 2005, the bank statements show a series of ATM
withdrawals, until a final withdrawal to close the bank account was made on May 25, 2005, in the
amount of $117.49. On several of the days that ATM withdrawals were made from the Wells Fargo
account, corresponding deposits were made into Hale's Guaranty State Bank account, including a
$100.00 cash deposit made on the date of the final withdrawal and closure of the Wells Fargo
account.

 On December 15, 2004, Hale announced that the meeting being held would be the last pack
meeting and that the pack earned $825.00 through the popcorn fundraiser. On January 6, 2005, Hale
notified Bailey that the pack had been disbanded due to lack of participation from parents and
children. In October of 2005, the pack regrouped. In March of 2006, Bailey asked Hale about the
cub scout's money. Hale told Bailey that he gave the money, together with a gray tote containing
books, patches and badges, to Brian Griffiths for another pack. Kristen Cook, the district executive
for the Alamo Area Council of Boy Scouts, informed Bailey that no record existed of any transfer
of money from Pack 812 to another pack. In June of 2006, Bailey contacted the authorities
requesting an investigation. On June 7, 2006, Hale gave Cook $873.68 of his personal money to
"make it go away," together with a box containing books, patches, and badges. Hale stated that he
used his personal money because he had graduated from the police academy and the open
investigation would harm his job prospects.

 Cook testified that she initially met with Hale on December 3, 2004, to explain the
responsibilities of a new cubmaster. Although she did not recall describing the financial
responsibilities of a cubmaster to Hale, Cook stated that cubmasters are encouraged to keep financial
records of expenses and deposits. Cook testified that the corporate office has a suggested method
for packs to follow with regard to finances; however, the bylaws do not contain a prescribed method. 
If a pack is disbanded, the bylaws state that the money would go back to the pack's charter
organization, which was a church for Pack 812. Cook further stated that random withdrawals of cash
are not encouraged. 

 Cook stated that Pack 812 was active in 2004, receiving three new enrollments in December. 
When Cook learned that the pack had disbanded in January of 2005, she contacted the parents
involved with the pack and requested that they meet with her to try to regroup. Cook met with six
parents on January 31, 2005. At that meeting, Bailey raised a concern regarding the popcorn money. 
Hale told Cook he gave the money to Griffiths, but Griffiths denied receiving the money. Cook
completed the official paperwork to close Pack 812 on May 31, 2005. Pack 812 regrouped in
October of 2005, and Hale applied to be a webelos den leader. 

 John Coyle, the scout executive for the Alamo Area Council of Boy Scouts, testified that the
bylaws state that money raised or received by a pack is acquired for the benefit of scouting. The
bylaws further state that if a unit is dissolved, any funds may be held in trust pending reorganization
of the pack or may be used elsewhere for the promotion of scouting. The Council decided to leave
the funds from Pack 812 in trust with the belief that the pack could be regrouped. Coyle stated that
units or packs are encouraged to use bank accounts requiring two signatures and to keep receipts of
expenditures.

 On July 16, 2006, Coyle wrote a letter at Hale's request stating that the matter regarding the
Pack 812 funds was considered closed. Hale did not inform Coyle that a criminal investigation was
pending, and Coyle stated he would not have written the letter if he had known of the investigation.

 Brian Griffiths testified that he helped organize Pack 812, but turned it over to Michael Mann
when his son graduated from cub scouts. Griffiths stated that he never received money or property
from Hale.

 Michael Mann testified that he did not endorse or deposit the check from the popcorn
fundraiser. Mann did not use an ATM card in relation to the Wells Fargo account. Mann stated that
Hale also told him that he gave Griffiths the money.

 Standard of Review


 In determining the legal sufficiency of the evidence, we review all the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a
factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the
verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust;
or (2) the verdict is against the great weight and preponderance of the evidence. Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "[D]ue deference must be accorded the fact finder's
determinations, particularly those determinations concerning the weight and credibility of the
evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate
only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest
injustice." Id. at 9. 

 Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. 
Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Circumstantial evidence alone is
sufficient to establish guilt. Id. Furthermore, the standard of review on appeal is the same for both
direct and circumstantial evidence cases. Id. 

Discussion


 A person commits an offense of misapplication of fiduciary property if he intentionally,
knowingly, or recklessly, misapplies property he holds as a fiduciary in a manner that involves
substantial risk of loss to the owner of the property or to a person for whose benefit the property is
held. Tex. Pen. Code Ann. § 32.45(b) (Vernon Supp. 2006). The term "misapply" means to deal
with property contrary to: (A) an agreement under which the fiduciary holds the property; or (B) a
law prescribing the custody or disposition of the property. Id. at §32.45(a)(2). 

 Hale initially challenges the sufficiency of the evidence to establish that he withdrew scout
money from the Wells Fargo account. The trial court considered bank statements reflecting deposits
into Hale's account corresponding with the dates and amounts of ATM withdrawals from the Wells
Fargo account. These statements were sufficient evidence to establish that Hale withdrew the scout
money.

 Hale next contends that the evidence is insufficient to establish that an agreement existed
requiring him to keep the scout money in any bank account. An "agreement" for purposes of
determining if property has been misapplied is defined as a harmonious understanding or an
arrangement, as between two or more parties, as to a course of action. Bynum v. State, 767 S.W.2d
769, 777 (Tex. Crim. App. 1989); Gonzalez v. State, 954 S.W.2d 98, 104 (Tex. App.--San Antonio
1997, no pet.). In this case, Cook and Coyle testified that the use of bank accounts was suggested
or encouraged by the Alamo Area Council of Boy Scouts. Furthermore, the arrangement that had
been established by Pack 812 with regard to keeping its funds was to maintain the funds in the Wells
Fargo Account as evidenced by the bank statements. Accordingly, there is sufficient evidence that
an agreement existed that required Hale to keep the scout money in the Wells Fargo account. 

 Hale further challenges the sufficiency of the evidence to support the finding that the money
he held was due "Jim Bailey and Cub Scout Pack 812." Although Hale contends that Jim Bailey and
Cub Scout Pack 812 were not the owners of the money because of testimony that the funds from a
dissolved pack were to be returned to the church as the sponsoring organization, the trial judge also
heard evidence that the funds could be left in trust for the reorganization of the pack. Furthermore,
the Texas Penal Code defines "owner" as an individual, corporation, or association that has title to
the property, possession of the property, or a greater right to possession of the property than the
actor. See Tex. Pen. Code Ann. § 1.07(a)(35)(A) & (a)(38) (Vernon Supp. 2006); see also Huett
v. State, 970 S.W.2d 119, 123 (Tex. App.--Dallas 1998, no pet.) (applying definition in appeal
addressing sufficiency of evidence in relation to offense of misapplication of fiduciary property). 
As between Hale and Bailey, the scoutmaster of the reorganized pack, and as between Hale and the
members of the pack, Bailey and the pack members had a greater right to possession of the money
than Hale. Moreover, the substantial risk of loss must involve the owner of the property or a person
for whose benefit the property is held. Hale clearly held the money in the Wells Fargo account for
the benefit of the pack members.

 Finally, Hale contends the evidence is insufficient to establish that the manner in which he
handled the money created a substantial risk of loss. The term "substantial risk of loss" means a real
possibility of loss. Casillas v. State, 733 S.W.2d 158, 164 (Tex. Crim. App. 1986); Dwyer v. State,
836 S.W.2d 700, 702 (Tex. App.--El Paso 1992, pet. ref'd). In this case, Aycock testified that Hale
stated he did not have the money to repay the missing funds during the initial stages of the
investigation. Furthermore, the evidence that Hale would randomly withdraw money that he would
immediately deposit into his personal account is evidence of a possibility of loss. Finally, evidence
that Hale did not make any effort to repay the money until after the investigation was undertaken is
further evidence that a loss was possible.

 The trial court's judgment is affirmed.

 Alma L. López, Chief Justice

DO NOT PUBLISH