**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00071-CR**
_____

**WILLIAM CURTIS JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 15-23712**

**MEMORANDUM OPINION**

William Curtis Jones appeals his conviction for misapplication of fiduciary property. Tex. Penal Code Ann. § 32.45 (West Supp. 2018). In one issue before the Court, Jones argues the evidence is legally insufficient to support his conviction. We affirm the judgment of the trial court.

1

## Background

Testimony at trial established that Jones was the executive vice president and board member of Management Resources Group, Inc. (MRG). Per the indictment, Jones was charged with:

> [I]ntentionally, knowingly, and recklessly misapply[ing] property . . . of the value of $200,000 or more, that [Jones] held as a fiduciary or as a person acting in a fiduciary capacity . . . contrary to an agreement under which [Jones] held the property, and in a manner that involved substantial risk of loss of the property to Management Resources Group, Inc., the owner of the property, . . . by applying funds from business accounts for Management Resources Group, Inc., for personal use[.]

Numerous witnesses testified over the course of several days in Jones's trial. These witnesses included investigators, board members, and investors of MRG. Testimony at trial established that Jones and Chester Stockton,[1] President and Chief Executive Officer of MRG, attempted to establish a green energy plant in Jefferson County.[2] Stockton solicited high profile members of the community to serve on the board of directors for MRG, including former elected officials and local business developers. At trial, several board members and advisors testified that they believed in the project and wanted to improve economic development in Jefferson County, while ultimately making money from their investment; however, it became clear that the

---

[1] Stockton died in 2011.

[2] The board members who testified at trial agreed that the project was in its infancy and would cost millions of dollars to complete.

project was disorganized and would not develop. One board member stated that a European corporation expressed interest in the project but insisted that MRG solicit five million dollars from "angel investors" before the European corporation would invest 100 million dollars in the project. Eventually, many board members resigned or distanced themselves from MRG.

Several MRG investors testified at trial. Each investor testified that they heard about MRG after they attended a real estate course taught by Stockton, through working with Stockton in real estate business, or by word of mouth. Stockton was "charismatic" and talked about a new green energy plant that would be coming to Jefferson County. According to Carlos Hughes, an MRG investor, Stockton told his students that MRG had stock options open for local people to invest. After a cash investment into MRG, each investor received an MRG stock certificate reflecting the value of their investment signed by Stockton and Jones or Stockton and Jeff Hayes, MRG's board chairman. The State admitted copies of the stock certificates as evidence at the trial.

After Stockton died in August of 2011, Jones held a meeting with investors and board members at a local restaurant. The State also admitted a recording of the meeting, and according to Hughes, Jones can be heard telling investors that he would not be taking a salary from MRG. Other investors and board members that attended

3

the meeting confirmed that Jones represented he would defer his salary from MRG. Investor Scarlett Brekel became suspicious of MRG and questioned her investment. After she made several attempts to clarify her investment and the direction of MRG with Jones, Brekel contacted law enforcement to investigate Jones and MRG.

Department of Public Safety investigator Brian Jagneaux testified that he was assigned to investigate MRG. He stated that he has been an investigator for over twenty years, primarily investigating financial crimes. He testified that when he attempted to investigate the corporation, "there was just no business. There was nothing for me to attach a search warrant to with regards to a building, a business, a computer, [or] related paperwork to businesses[.]" When Jagneaux visited MRG's corporate office, he discovered the office consisted of a room with an empty desk and one telephone.

Jagneaux eventually learned that MRG had a bank account and subpoenaed the bank records. Stockton and Jones were the only signatories on this MRG account. His investigation of MRG's corporate bank account records revealed that investor checks were deposited into the account between June 2010 and December 2010, and Jones and Stockton wrote checks out of the MRG account payable to themselves and deposited the funds into their personal accounts. Jagneaux stated that Jones wrote checks to himself from MRG's corporate bank account totaling over $200,000.

Jagneaux also testified that he contacted the Commissioner of the State Securities Board and discovered that MRG was not "registered by qualification, notification or coordination," and no permit had ever been issued to the corporation for the sale of securities in the State of Texas. He testified that neither Stockton nor Jones were registered in the State of Texas as an agent or dealer of securities.

The State introduced evidence showing that thirteen investors in the local community invested over $300,000 with MRG. Over a period of six months, from June 2010 to December 2010, Jones wrote checks from MRG's account to himself in the amount of $216,000 and deposited the sums into two personal bank accounts.[3] Several board members testified that the corporation never authorized Jones to be paid or write checks to himself from the MRG account.

The State admitted records from Jones's personal bank accounts into evidence. These records showed that Jones spent the money on personal expenses, including food, monthly household bills, car payments, clothing, and miscellaneous expenses to various department stores. By 2011, the MRG account was depleted.

---

[3] Testimony at trial established that Jones wrote checks to Stockton from the MRG account in the amount of $61,448. Stockton also wrote checks to himself out of the MRG account. Some checks were written to board members or advisors of MRG for miscellaneous expenses, and other checks were labeled as salary advances to various individuals.

Charles Keith Hawkes, a certified public accountant and forensic accountant with the Jefferson County District Attorney's Office, also testified. He is a certified fraud examiner. Hawkes testified that investors deposited a total of $348,386 into MRG's corporate bank account. He testified that all the money in the MRG account, other than the initial $200 to open it, consisted of money from investors. He stated that all transactions out of MRG's account stopped in late December 2010, after a final payment to Jones. After that last transaction, the account had a zero balance and was ultimately closed in May of 2011. Hawkes stated that Jones deposited these checks into two of his personal bank accounts. Hawkes testified that the first investor payments to MRG were deposited on June 3, 2010, and bank records showed that Jones wrote himself a check from MRG's account in the amount of $3500 on June 4, 2010. Jones wrote several checks to himself during that first month and deposited the funds into his personal accounts. According to Hawkes, Jones basically "drained" the MRG account in June, all of which was deposited into his personal accounts. Investors continued investing in MRG from June 2010 to December 2010, with each investment being deposited into the MRG bank account. Jones continued to write checks to himself through December 2010. Hawkes testified that from June 2010 to December 2010, Jones wrote checks to himself totaling $216,000 from MRG's account. Hawkes could not say if Jones was authorized to write the checks.

6

The jury found Jones guilty of the crime of misapplication of fiduciary property and sentenced him to incarceration in the Texas Department of Corrections for ten years and a $10,000 fine. Jones timely filed this appeal.

**Standard of Review**

In his sole issue, Jones argues that the evidence is insufficient to support his conviction for misapplication of fiduciary property. When there is a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895, 902 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citations omitted). The jury is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citations omitted). A jury may draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial. *Id.*; *Hooper*, 214 S.W.3d at 15. Accordingly, we are required to defer to the factfinder's determinations of the credibility of the witnesses and the weight to be given to their testimony. *See Brooks*, 323 S.W.3d at

899. In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id.* (citing *Jackson*, 443 U.S. at 326). Although we defer to the jury's resolution of the facts, our review is to determine whether the jury's inferences from the facts that were before it were "'reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id*. (quoting *Hooper*, 214 S.W.3d at 16–17). Generally, in a sufficiency review, the appeals court is required to uphold the jury's verdict "unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012) (citing *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)). "If we find the evidence insufficient, we must reverse the judgment and enter an order of acquittal." *Skillern v. State*, 355 S.W.3d 262, 268 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citations omitted).

**Fiduciary Duty**

Jones asserts that the State failed to meet its burden because the "funds that [Jones] applied were not held in a fiduciary capacity, much less misapplied." "A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary . . . in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held." Tex. Penal Code. Ann. § 32.45(b). Section 32.45 construes "fiduciary" broadly. *See Coleman v. State*, 131 S.W.3d 303, 308 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citation omitted). "In common parlance, a fiduciary refers to a person or entity having a duty, created by his undertaking, to act primarily for another's benefit in matters connected to the undertaking." *Huett v. State*, 970 S.W.2d 119, 124 (Tex. App.—Dallas 1998, no pet.) (citing Black's Law Dictionary 625 (6th ed.1990)). "'[O]ne acts in a 'fiduciary capacity' for purposes of the misapplication statute if his relationship with another is based not only on trust, confidence, good faith, and utmost fair dealing, but also on a justifiable expectation that he will place the interests of the other party before his own.'" *Black v. State*, 551 S.W.3d 819, 830 (Tex. App.—Corpus Christi 2018, no pet.) (quoting *Berry v. State*, 424 S.W.3d 579, 585 (Tex. Crim. App. 2014)).

In this case, Jones argues that because he did not owe a fiduciary duty to the investors in MRG, he cannot have misapplied the funds as defined under section 34.25. Appellant's argument is without merit. The indictment charges Jones with a breach of a fiduciary duty to MRG, the corporation. "A corporation can act only by and through its officers." *Brooks v. Zorn*, 24 S.W.2d 742, 746 (Tex. Civ. App.—Beaumont 1929, writ dism'd w.o.j.). Corporate officers owe a strict fiduciary obligation to the corporations they serve. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963); *Grinnell v. Munson*, 137 S.W.3d 706, 718 (Tex. App.—San Antonio 2004, no pet.) (citation omitted); *Faour v. Faour*, 789 S.W.2d 620, 621–22 (Tex. App.—Texarkana 1990, writ denied) ("A corporate officer owes a fiduciary duty to the shareholders collectively, i.e., the corporation, but he does not occupy a fiduciary relationship with an *individual* shareholder, unless some contract or special relationship exists between them in addition to the corporate relationship.") Under Texas Penal Code section 7.23(a), "[a]n individual is criminally responsible for conduct that he performs in the name of or in behalf of a corporation or association to the same extent as if the conduct were performed in his own name or behalf." Tex. Penal Code Ann. § 7.23(a) (West 2011).

Evidence at trial established Jones was vice president of MRG and signatory on several stock certificates issued to investors. In addition, Jones was one of only

10

two people with authorized access to funds deposited in the MRG corporate account. "A person acts in a fiduciary capacity when the person handles money or property for the benefit of another person." *Coleman*, 131 S.W.3d at 308 (citing *Gonzalez v. State*, 954 S.W.2d 98, 103 (Tex. App.—San Antonio 1997, no pet.)); *see also GNG Gas Sys. v. Dean*, 921 S.W.2d 421, 427 (Tex. App.—Amarillo 1996, writ denied) (citations omitted) ("[W]hen a corporate officer or director diverts assets of the corporation to his own use, he breaches a fiduciary duty of loyalty to the corporation."). Therefore, we conclude Jones owed MRG a strict duty as a fiduciary not to misapply MRG's corporate assets, i.e., corporate funds.

**Misapplication of Property**

After determining that Jones owed a fiduciary duty to MRG, we now turn our analysis to whether he misapplied the funds of the MRG corporate bank account. "'Misapply' means deal with property contrary to: (A) an agreement under which the fiduciary holds the property; or (B) a law prescribing the custody or disposition of the property." Tex. Penal Code Ann. § 32.45(a)(2).

The evidence at trial established that the investors invested in MRG to develop a green energy plant in Jefferson County. For their investment, the investors were issued stock certificates in the corporation. Evidence showed that Jones and Stockton were the only individuals authorized to sign on MRG's corporate bank account that

11

contained the investors' funds. Jones argues that payments he received were for services rendered to the corporation for his efforts to create a successful business plan and project. Jones contends the State failed to establish that the money Jones received was in contravention of any agreement with MRG to receive compensation for services he rendered for the corporation.

To sustain his conviction, it was necessary for the State to prove that the money was not used in compliance with an agreement under which Jones held the property. *See* Tex. Penal Code Ann. § 32.45(a)(2)(A); *Skillern*, 355 S.W.3d at 269 (citation omitted). The evidence showed Jones represented he would not take a salary from MRG. The State admitted a recording of a meeting and, according to Hughes, Jones can be heard telling investors that he would not be taking a salary from MRG. Further, testimony from board members indicated that the board had not authorized Jones to receive a salary from MRG.

Financial records admitted at trial showed that between June and December of 2010, Jones signed checks to himself from MRG's account totaling $216,000. Jones's bank records admitted at trial showed that Jones deposited the checks into his personal bank accounts. While Jones argues the payments were for a salary, the financial records did not show regular payments in similar amounts as one might expect if the payments were for a salary. Rather, there were multiple payments to

12

Jones in the same months, sometimes on successive days, in varying amounts, with no evident regularity, until the account was depleted. An investigator assigned to investigate the corporation testified that "there was just no business[,]" and MRG's corporate office only consisted of a room with an empty desk and a phone. While unnecessary to sustain the conviction, it was shown that Jones spent the money deposited into his accounts on miscellaneous personal items including car payments, household utilities, food, and various home goods purchases. *See Huett*, 970 S.W.2d at 124–25 (holding evidence was legally and factually sufficient to convict appellant of misapplication of fiduciary property because the appellant was a fiduciary as an "officer, manager, employee or agent" who held investor's money, and [they] misapplied the funds entrusted to [them] as a fiduciary by spending "a great number of personal expenditures unrelated to the oil lease business and directly related to the personal use and benefit of [appellant]"). Therefore, we conclude that there was sufficient evidence that Jones misapplied the corporate funds in contravention of an agreement under which he held them.

## Conclusion

Having determined that there was sufficient evidence for the jury to convict Jones of misapplication of fiduciary property, we overrule Jones's single issue and affirm the judgment of the trial court.

13

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 14, 2019
Opinion Delivered July 24, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.