Opinion issued March 20, 2008







         








     

In The
Court of Appeals
For The
First District of Texas




NO. 01–07–00209–CR




RUSTY BOBBY RUSSELL, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1064472



 
MEMORANDUM OPINION
          Appellant, Rusty Bobby Russell, was charged by indictment with state-jail-felony theft of a trailer, to which appellant pleaded not guilty. See Tex. Pen. Code
Ann. § 31.03(a), (e)(4)(a) (Vernon Supp. 2007). A jury found appellant guilty, and
the trial court assessed punishment at 15 months’ confinement.
          In three points of error, appellant contends that (1) the trial court erred by
denying appellant’s request for a “mistake of fact” instruction; (2) the trial court erred
by improperly instructing the jury about the requisite mens rea necessary to prove
theft in a contract situation; and (3) the evidence was legally insufficient to support
his conviction.
          We reverse and remand.
Background
          Prior to the incident at issue, appellant worked as general manager of sales for
Big Tex Trailers in Houston, Texas. Appellant’s duties included selling Wells Cargo
brand box trailers. Appellant was authorized by Big Tex to negotiate sales deals,
some of which involved dealer-to-dealer transactions, and to assign certificates of
title to trailer purchasers on behalf of Big Tex. 
          On February 14, 2006, appellant executed a dealer-to-dealer transaction in
which he traded the trailer at issue, a 2003 Wells Cargo box trailer (“Big Tex trailer”),
to his friend and business associate, Robert Hunt of Trailers Xtreme (“Xtreme”). In
exchange, Xtreme traded a 2003 Wells Cargo box trailer (“Xtreme trailer”) to Big
Tex. 
          The invoice by appellant did not reflect a value of the Big Tex trailer, but it
reflected that the Xtreme trailer had been given a trade-in value of $2,000.00. The
invoice included an “HO number,” which identified the Xtreme trailer internally at
Big Tex, and included a notation that the Big Tex trailer previously had been rented
out and was “used.” Appellant also submitted a commission voucher to Big Tex
(seeking his commission on the sale) on which he stated that the cost of the Big Tex
trailer was $4,306, that the trailer had been rented out for a five-month period, that
the net price of the trailer (after trade-in) was $2,000, and that there was a loss of 124
percent on the transaction. 
          The Texas Certificate of Title (“title”) to the Big Tex trailer reflected that Big
Tex was the owner, and appellant executed an assignment to Xtreme on the back of
the title. In exchange, Xtreme gave to Big Tex the title to the Xtreme trailer. The
title to the Xtreme trailer was not in Xtreme’s name; however, the back of the title
reflected that the previous owner had signed over the title. Although the titles were
exchanged and the Xtreme trailer was delivered to the Big Tex lot, the Big Tex trailer
was never delivered to Xtreme.
 
          The next day, on February 15, 2006, Susie Weber, operations manager for Big
Tex’s retail division, went to the Houston Big Tex store to investigate certain
transactions involving appellant. Weber testified that, as part of appellant’s duties as
general manager, appellant had authorization to sell Big Tex trailers and to assign
titles to the purchasers, provided that the sales were within Big Tex’s guidelines. 
Weber testified that the trade between Big Tex and Xtreme was not within Big Tex
guidelines. 
          Weber explained that, although the Big Tex trailer was a 2003 model, it was
a “new” trailer, that Big Tex’s cost “would have been” $4,300.00, and that retail
“would have been” $5,400.00. The trade-in from Xtreme was valued by appellant at
$2,000.00. Weber testified that a transaction constituting such a substantial loss to
Big Tex would not have been approved. Weber also explained that, when a trailer is
sold, the buyer receives a copy of the invoice and Big Tex registers the title with the
state. When Big Tex makes dealer-to-dealer transactions, however, it is customary to
exchange original titles. 
          On February 17, 2006, appellant was placed on suspension, pending the
outcome of Big Tex’s investigation. In March, appellant was terminated.
          Danny Woodson, general counsel for Big Tex, testified that the exchange with
Xtreme was not a bona fide arm’s-length transaction because of the disparity in the
values given to the trailers.
          In March 2006, Xtreme, through Hunt, made demands on Big Tex for delivery
of the Big Tex trailer, which Big Tex refused. Hunt testified that the trailer he traded
to Big Tex was worth more than the trailer he was to receive from Big Tex but that
he made the transaction because he had not been able to sell the Xtreme trailer. Hunt
testified that he had a buyer for the Big Tex trailer. On the advice of law
enforcement, Hunt brought the assignment of title regarding the Big Tex trailer to the
Texas Department of Transportation (“TxDot”) to execute the transfer to Xtreme. 
          On April 8, 2006, Hunt hired appellant to go to the Big Tex lot, retrieve the Big
Tex trailer at issue, and haul it to Xtreme. Appellant testified that, later that same
day, appellant drove to the Big Tex lot, accompanied by Mike Meredith, another ex-employee and a co-defendant in this case, in a separate truck. Meredith hooked onto
the Big Tex trailer at issue while appellant drove to the back of the six-acre lot and
spoke with Big Tex employee, Rudy Vasquez, concerning the location of another
trailer at issue between the parties. Brad Fowler, who had been hired to replace
appellant as general manager of Big Tex on April 2, 2006, testified that he drove to
the back of the lot, met up with appellant, and told appellant to leave. When Fowler
tried to drive back to the front of the lot, appellant drove in front of Fowler, blocking
his way. Appellant testified that he blocked Fowler in because he did not want
Fowler to interfere with Meredith. Moments later, Meredith pulled out of the lot
towing the Big Tex trailer, and appellant drove out behind Meredith. Fowler
followed, calling the police from his cellular telephone.
          All three men pulled into a parking lot, where Fowler told appellant and
Meredith that they were committing a theft and that the police were on the way. 
Appellant told Meredith to leave with the trailer. A chase ensued, with Fowler on his
cellular telephone with the police. Finally, the police caught up with appellant and
Meredith and brought everyone back to Big Tex.
          Officer P. Slater, of the Houston Police Department, investigated the matter at
Big Tex. Officer Slater testified that appellant asserted to her at the scene that Xtreme
owned the trailer and had authorized him to retrieve it from Big Tex, and that
appellant directed her to documentation in the seat of his truck. Officer Slater
testified that she compared appellant’s documentation with that of Big Tex and that
it “took several hours” of going through paperwork to determine who owned the
trailer. Officer Slater testified that it was her opinion that Big Tex owned the trailer
and that, in part, because appellant had been instructed by Big Tex not to return to the
Big Tex property, she arrested appellant.
          In June 2006, TxDOT issued a title reflecting that Xtreme was the owner of the
Big Tex trailer. 
 
Legal Sufficiency
          In his third point of error, appellant contends that the evidence is legally
insufficient to support his conviction. 
A.      Standard of Review and Applicable Legal Principles
          A legal sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Parker v. State, 192 S.W.3d 801,
804 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). Although our analysis
considers all of the evidence presented at trial, we may not re-weigh the evidence and
substitute our judgment for that of the fact-finder. King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000).
          A person commits theft if he unlawfully appropriates property with intent to
deprive the owner of the property. Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp.
2007). “Appropriate” means (A) to bring about a transfer or purported transfer of title
to or other nonpossessory interest in property, whether to the actor or another or (B)
to acquire or otherwise exercise control over property other than real property. Id. §
31.01(4). Appropriation of property is unlawful if, inter alia, it is without the owner’s
effective consent. Id. § 31.03(b).
          “Deprive” means to withhold property from the owner permanently or for so
extended a period of time that a major portion of the value or enjoyment of the
property is lost to the owner; to restore property only upon payment of reward or
other compensation; or to dispose of property in a manner that makes recovery of the
property by the owner unlikely. Id. § 31.01(2). A person acts intentionally with
respect to the nature of his conduct or a result of his conduct when it is his conscious
objective or desire to engage in the conduct or to cause the result. Tex. Pen. Code
Ann. § 6.03(a) (Vernon 2003). 
          Pursuant to the Penal Code and as applicable herein, a person is an “owner” if
he has title to the property, possession of the property, whether lawful or not, or a
greater right to possession of the property than the actor. Tex. Pen. Code Ann.
§ 1.07(a)(35) (Vernon Supp. 2007). 
B.      Analysis
          1.       Unlawfully appropriates property
          The State was first required to prove that appellant unlawfully appropriated
property. The State presented evidence that appellant appropriated the trailer by
exercising control over it. Appellant testified that he drove to the Big Tex lot to
retrieve the trailer and that he blocked Fowler in because he did not want Fowler to
interfere with Meredith, who was hooking up to the trailer. Moments later, when
Meredith pulled out of the lot towing the Big Tex trailer, appellant drove out behind
him and then attempted to interfere with Fowler when he followed. 
          The State presented evidence that the appropriation was unlawful because
appellant did not have consent of the owner, who was Fowler. The indictment named
Fowler as the owner of the trailer. See Castillo v. State, 469 S.W.2d 572, 573 (Tex.
Crim. App. 1971) (explaining that, when allegedly stolen property is owned by
corporation, it is proper for indictment to allege that property was taken from custody
and control of natural person acting for corporation); Chowdhury v. State, 888
S.W.2d 186, 187 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). Hence, the State
was first required to prove beyond a reasonable doubt that Fowler was the special
owner of the trailer at the time of the alleged misappropriation. See Tex. Pen. Code
Ann. § 31.03; Castillo, 469 S.W.2d at 573. Fowler was the “owner” if he (1) had title
to the property, (2) possession of the property, whether lawful or not, or (3) a greater
right to possession of the property than appellant. See Tex. Pen. Code Ann.
§ 1.07(a)(35)(A). “Possession” means actual care, custody, control, or management. 
Id. § 1.07(a)(39).
          Weber testified that Big Tex did not physically have the title to the trailer after
some point in mid-February. Appellant and Hunt each testified that appellant
executed an assignment of the title on February 14, 2006. The evidence also shows
that the title was still in the name of Big Tex on the date of the incident. 
          The undisputed evidence shows, however, that the trailer was in Fowler’s
possession on the Big Tex lot at the time of the incident. As is defined under the
Penal Code, evidence of possession is sufficient to satisfy ownership under the
statute. See id § 1.07(a)(35)(A). Here, Fowler testified that he is the general manager
of Big Tex. Generally, proof of a management position alone is insufficient to sustain
the ownership allegation absent some showing that the named owner exercised some
degree of care, custody, control, or management over the property allegedly stolen. 
See Bryant v. State, 627 S.W.2d 180, 183–83 (Tex. Crim. App. 1982). 
          Here, the record shows that, in addition to Fowler’s management position,
Fowler exercised some degree of care, custody, control, or management of the
property by chasing after appellant when he and Meredith left with the Big Tex
trailer, confronting appellant, and trying to recover the trailer. Fowler testified that
appellant’s taking of the trailer was without consent and that appellant was told on
the date of the incident that his taking was considered by Fowler to be a theft.
          Viewing the evidence in the light most favorable to the verdict, we conclude
that the jury could have reasonably concluded that Fowler was the owner of the
trailer, as defined under the Penal Code, such that appellant’s appropriation of, or
exercise of control over, the trailer was unlawful. See Tex. Pen. Code Ann.
§§ 1.07(a)(35)(A), 31.03.
          2.       Intent to deprive the owner of the property
          The State was also required to prove that appellant’s unlawful appropriation
of the trailer was coupled with an intent to deprive the owner, Fowler, of the trailer.
          Here, the State presented evidence that appellant drove into the Big Tex lot
and, without stopping and going into the business office and while Meredith was
hooking up his truck to the Big Tex trailer, appellant went to the back of the six-acre
lot looking for Vasquez, the service manager, to inquire about the location of another
trailer. When Fowler met up with appellant and told him to leave, appellant blocked
Fowler’s vehicle from driving back to the front of the lot. Appellant admitted at trial
that he blocked Fowler to keep him from interfering with Meredith’s taking of the Big
Tex trailer. Moments later, Meredith pulled out of the lot towing the Big Tex trailer,
with its back door unsecured and thrashing about. Appellant immediately followed,
with Fowler close behind, and a chase ensued. When Fowler caught up with
appellant and Meredith in a parking lot, Fowler explained that he perceived the taking
of the trailer to be a theft and that the police had been called. Fowler testified that
appellant told Meredith to go ahead and leave with the trailer, at which time another
chase ensued, with appellant attempting to block Fowler’s vehicle from following
Meredith. The police apprehended appellant and Meredith, with the trailer, in
Meredith’s driveway. 
          A jury may infer intent from a defendant’s acts, words, and conduct. Hart v.
State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); McGee v. State, 923 S.W.2d 605,
608 (Tex. App.—Houston [1st Dist.] 1995, no pet.). From this evidence, the jury
could have reasonably concluded that appellant intended to deprive the owner,
Fowler, of the trailer.
          Appellant contends that the evidence is necessarily legally insufficient because,
at the time of the incident, “a bona fide dispute exist[ed] as to the ownership of the
trailer,” citing Roper v. State, 917 S.W.2d 128 (Tex. App.—Fort Worth 1996, pet.
ref’d). In Roper, the appellant, who was an employee of Terrell, was convicted of
theft after he sold Terrell’s hay to Larson and failed to give the funds to Terrell. Id.
at 132–33. The evidence showed that Terrell owed appellant wages, that Terrell told
appellant that he strictly wanted cash for the hay, and that Terrell told appellant to
keep a portion of the sale as a commission. Id. at 130–31. The court concluded that
the State’s evidence that Larson’s check was made payable to appellant and that
appellant cashed the check was insufficient to show that appellant had the requisite
intent to deprive Terrell of the funds at the time appellant accepted payment from
Larson. Id. at 131. In reversing the theft conviction and concluding that the case was
a civil contract dispute, the court acknowledged that “theft convictions resulting from
otherwise civil contractual disputes may warrant reversal for insufficient evidence
where there is no evidence supporting the requisite criminal intent.” Id. at 132
(emphasis added) (citing cases examining consent of owner obtained by deception). 
          Here, as discussed above and unlike Roper, the State presented evidence that
appellant had the requisite criminal intent to deprive Fowler of the trailer.
          In sum, viewing the evidence in the light most favorable to the verdict, we
conclude that a rational trier of fact could have found beyond a reasonable doubt that
Fowler was the owner of the trailer on the date of the incident and that appellant
unlawfully appropriated the trailer with intent to deprive Fowler of the trailer. We
hold that the evidence is legally sufficient to support the jury’s verdict. See Johnson,
23 S.W.3d at 7.
          Accordingly, appellant’s third point of error is overruled.
Mistake of Fact
          In his first point of error, appellant contends that the trial court erred by
denying appellant’s request for a “mistake of fact” instruction. Specifically, appellant
contends that the evidence raised an issue of mistake of fact with regard to the
ownership of the trailer, that he reasonably believed that Xtreme was the owner of the
Big Tex trailer, and thus he was acting with authorization from the owner to retrieve
the trailer from Big Tex. 
          We review alleged charge error by first determining whether error existed in
the charge and, if so, analyzing whether sufficient harm resulted from the error to
warrant reversal. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).
          When evidence from any source raises a defensive issue and the defendant
properly requests a jury charge on that issue, the trial court must submit the issue to
the jury. Mendoza v. State, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002). A
defendant is entitled to an instruction on any defensive issue raised by the evidence
regardless of whether the evidence is weak or strong, unimpeached or contradicted,
and regardless of what the trial court may think about the credibility of the defense. 
See Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).
          “It is a defense to prosecution that the actor through mistake formed a
reasonable belief about a matter of fact if his mistaken belief negated the kind of
culpability required for commission of the offense.” Tex. Pen. Code Ann. § 8.02(a)
(Vernon 2003); Williams v. State, 930 S.W.2d 898, 902 (Tex. App.—Houston [1st
Dist.] 1996, pet. ref’d). “‘Reasonable belief’ means a belief that would be held by an
ordinary and prudent man in the same circumstance as the actor.” Tex. Pen. Code
Ann. § 1.07(a)(42). Neither the trial court nor the appellate court decides whether
appellant’s mistaken belief was reasonable; this question is reserved for the jury. See
Granger v. State, 3 S.W.3d 36, 37 (Tex. Crim. App. 1999). The rule is designed to
insure that the jury, not the judge, will decide the credibility of the evidence. Id. 
          The issue is whether the evidence cited by appellant, if believed, raises a
mistake of fact defense by negating appellant’s culpable mental state. Murchison v.
State, 93 S.W.3d 239, 252 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d). If the
evidence, viewed in a light favorable to appellant, does not establish a mistake of fact
defense, then the trial court did not err in refusing an instruction. Id.
          Here, appellant was charged with having unlawfully appropriated property with
intent to deprive the owner of the property. Hence, the culpable mental state that the
State was required to prove was intent to deprive the owner of the trailer. 
          Appellant testified that he believed that Xtreme was the owner of the trailer at
the time of the incident. Appellant testified that he conveyed ownership of the Big
Tex trailer to Xtreme while acting within the regular scope of his employment at Big
Tex. Appellant testified, and the evidence showed, that appellant created a bill of sale
and assigned the certificate of title to Xtreme and that Big Tex received Xtreme’s
trade-in trailer and its title. Officer Slater testified that it took her “hours” of combing
through documentation at Big Tex to determine who owned the trailer and that the
ownership of the trailer was in question. Hunt testified that he owned the trailer at
issue and that he hired appellant on April 8, 2006 to retrieve the trailer from Big Tex.
 
          This evidence, when viewed in the light favorable to appellant and if believed
by the jury, raises a mistake of fact defense by negating that appellant intended to
deprive the owner of the trailer. See Granger, 3 S.W.3d at 41; Murchison, 93 S.W.3d
at 252. Appellant was therefore entitled to a jury instruction on mistake of fact
pursuant to section 8.02 of the Penal Code. 
          Having concluded that the trial court erred by failing to instruct the jury on
appellant’s defense, we must determine whether the error harmed appellant.
          At the close of evidence, appellant requested an instruction as follows: 
You are instructed that it is a defense to prosecution that a person
through mistake formed a reasonable belief about a matter of fact if his
mistaken belief negated the kind of culpability required for the
commission of the offense. A reasonable belief means a belief that
would be held by an ordinary and prudent man in the same
circumstances as the defendant. So, if you find from the evidence in this
case that at the time defendant took the property in question he acted
under a mistake of fact, that is, a reasonable belief that is was Trailers
Extreme property, or if you have a reasonable doubt thereof, you will
find the defendant not guilty.
 
The trial court denied appellant’s request that the instruction be included in the jury
charge. 
          Because appellant properly preserved error by objecting to the charge and by
submitting his proposed jury instructions, we must reverse the conviction and order
a new trial if appellant suffered any actual harm, regardless of degree. Hayes v. State,
728 S.W.2d 804, 808 (Tex. Crim. App. 1987). “The actual degree of harm must be
assayed in light of the entire jury charge, the state of the evidence, including
contested issues and weight of probative evidence, the argument of counsel, and any
other relevant information revealed by the record of the trial as a whole.” Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). 
          Here, the record shows that appellant’s entire defense rested on a mistake of
fact with respect to the owner of the trailer. Appellant pursued this theory in his
opening and closing statements at trial, and, as discussed above, introduced testimony
on the issue. We conclude that appellant was entitled to have the jury consider his
defense in its determination of guilt. See Miller v. State, 815 S.W.2d 582, 585–86
(Tex. Crim. App. 1991). We conclude that appellant suffered some actual harm by
the trial court’s erroneous denial of his properly requested jury instruction.
          Accordingly, we sustain appellant’s first point of error.
 
 
 
Conclusion
 
       Because we find reversible error, we do not address appellant’s remaining point
of error. We reverse the judgment of the trial court and remand for a new trial.
 
 
 
 
                                                           Laura Carter Higley
                                                           Justice
 
 
 
 
Panel consists of Justices Nuchia, Hanks, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).